TWENTIETH CENTURY FOX HOME ENTERTAINMENT, INC
v DEPARTMENT OF TREASURY

Docket No. 258664. Submitted April 4, 2006, at Lansing. Decided April 6, 2006, at 9:00 a.m.

Twentieth Century Fox Home Entertainment, Inc., petitioned the Tax Tribunal after the Department of Treasury indicated that the petitioner had outstanding single business tax liability for several tax years. This liability resulted in large part from the respondent's assertion that the petitioner was required to add to its single business tax base payments the petitioner made to a motion picture producer. The tribunal determined that the payments were royalty payments, but, because the petitioner was a film distributor for purposes of MCL 208.9(4)(g)(*vii*), it was entitled to not include in its tax base those payments made after July 14, 1993. The respondent appealed.

The Court of Appeals *held*:

The tribunal did not commit an error of law in determining that the petitioner is a film distributor for the purposes of MCL 208.9(4)(g)(*vii*). Generally, to determine its single business tax base, a single business tax payer must add to its business income all royalties to the extent that they were deducted in arriving at federal taxable income. MCL 208.9(4)(g)(*vii*), however, permits a film distributor to not include in its tax base royalty payments made to film producers. The Legislature gave this exception retroactive effect to July 15, 1993. While the Legislature failed to define the term "film distributor," the plain language of the statute indicates that it applies to one who distributes motion pictures, including one who distributes them through the medium of videocassettes, as the petitioner does.

Affirmed.

TAXATION — SINGLE BUSINESS TAX — FILM DISTRIBUTORS.

A film distributor is permitted to not include in its single business tax base royalty payments made after July 14, 1993, to film producers; for the purposes of this exception, a film distributor includes one who distributes motion pictures, including those distributed through the medium of videocassettes (MCL 208.9[4][g][*vii*]).

*Dykema Gossett PLLC* (by *Steven E. Grob, Sherrill D. Wolford,* and *Laura Sagolla*) for the petitioner.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Kevin T. Smith,* Assistant Attorney General, for the respondent.

Before: KELLY, P.J., and JANSEN and TALBOT, JJ.

JANSEN, J. Respondent, Department of Treasury, appeals as of right a Tax Tribunal judgment finding in part that petitioner, Twentieth Century Fox Home Entertainment, Inc., is a film distributor and, therefore, is not required to include the royalty payments it makes to film producers in its tax base. We affirm.

Petitioner distributes copyrighted motion pictures for home entertainment primarily using the medium of videocassettes. In 1997, respondent asserted that petitioner had outstanding tax liability under the Single Business Tax Act (SBTA), MCL 208.1 *et seq.,* totaling more than $500,000 for the tax years ending on June 30, 1991; June 28, 1992; June 27, 1993; and July 3, 1994. This liability resulted in large part from respondent's assertion that petitioner was required to add to its tax base payments it made to motion picture producer Twentieth Century Fox Film Corporation (Fox Film).

Petitioner filed a petition in the Tax Tribunal asserting that the payments it made to Fox Film were not royalty payments, and, therefore, it was not required to add them to its tax base. Petitioner further contended that even if the payments were royalty payments, because it is a film distributor, the payments it made to Fox Film after July 14, 1993, were not required to be added to its tax base pursuant to the SBTA amendments made by 1996 PA 347. Following a hearing on the

matter, a hearing officer issued a proposed opinion and judgment holding that the payments petitioner made to Fox Film were royalty payments, but petitioner was a film distributor, entitling it to not include in its tax base the payments it made to Fox Film after July 14, 1993. Over objections, the Tax Tribunal adopted the judgment of the proposed opinion.

Respondent contends on appeal that an entity whose principal business activity is the distribution of copyrighted motion pictures in cassette form for private home entertainment is not a film distributor for purposes of MCL 208.9(4)(g)(*vii*).

In *Michigan Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490-491; 618 NW2d 917 (2000), this Court provided the following for review of Tax Tribunal decisions:

> This Court's authority to review a decision of the Tax Tribunal is very limited. In the absence of an allegation of fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal committed an error of law or adopted a wrong legal principle. The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record. [Citations omitted.]

Resolution of this issue also involves a question of statutory interpretation. Statutory interpretation presents a question of law that is reviewed de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). Yet "[t]his Court will generally defer to the Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing." *Michigan Milk Producers Ass'n, supra* at 491.

The single business tax (SBT) is a "consumption-type value-added tax" that is subject to certain exemptions,

exclusions, and adjustments. *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 408-409; 488 NW2d 182 (1992). Generally, in calculating its tax base for SBTA purposes, a taxpayer must add to its business income all royalties to the extent that they were deducted in arriving at federal taxable income. MCL 208.9(4)(g); *Field Enterprises v Dep't of Treasury*, 184 Mich App 151, 153; 457 NW2d 113 (1990). "A related provision requires that the taxpayer deduct royalties, to the extent included in arriving at federal taxable income, in determining its tax base." *Id.*, citing MCL 208.9(7)(c). Rent is not included in determining the payer's tax base. *Field Enterprises, supra* at 154.

In 1990, a television station operator sought a tax refund in the Court of Claims, asserting that the defendant, the Department of Treasury, had improperly considered payments it made to a television show distributor under an exclusive license as royalties rather than rent. *Field Enterprises, supra* at 152-153. This Court disagreed and found that the payments were royalties, and, accordingly, were properly included in the taxpayer's tax base. *Id.* at 157.

Before the decision in *Field Enterprises*, petitioner deducted from its tax base those payments it made to film distributors and included in its tax base payments it received from videocassette distribution. Following *Field Enterprises*, respondent asserted that petitioner was required to add to its tax base, as royalties, the payments it made to film producers, though it could also deduct any royalties it received from sublicensees, MCL 208.9(7)(c).

Subsequently, the Legislature adopted 1993 PA 105, which excepted from the royalties that had to be added to and deducted from the payer's tax base, depending on federal tax treatment, those royalties paid by television

or radio broadcasters for program matter or signals, MCL 208.9(4)(g)(*vi*); MCL 208.9(7)(c)(*v*), and "[f]ilm rental payments made by a theater owner to a film distributor," MCL 208.9(4)(g)(*v*); MCL 208.9(7)(c)(*iv*). Following the enactment of this legislation, film distributors had to include in their tax base any royalties they paid to film producers, MCL 208.9(4)(g), but could not deduct from their tax base the royalties they received from theater owners, MCL 208.9(7)(c)(*iv*).

The Legislature amended the statute again through 1996 PA 347, which added "[r]oyalties, fees, charges, or other payments or consideration paid by a film distributor for copyrighted motion picture films, program matter, or signals to a film producer" to the list of the types of royalties that did not have to be added or deducted from the payer's business income in determining its tax base. MCL 208.9(4)(g)(*vii*); MCL 208.9(7)(c)(*vi*).[1] Thus, it permitted a film distributor to not include in its tax base the royalty payments it made to film producers, MCL 208.9(4)(g)(*vii*), but prohibited film producers from deducting royalty payments they received, MCL 208.9(7)(c)(*vi*). 1996 PA 347 was given retroactive effect to the effective date of 1993 PA 105, i.e., July 15, 1993.

In the Tax Tribunal, petitioner asserted, and the tribunal agreed, that as a videocassette distributor, it was a film distributor and, therefore, was not required to include royalty payments it made to film producers in its SBT base, pursuant to MCL 208.9(4)(g)(*vii*). Contrarily, respondent has asserted that petitioner is not a film distributor and, therefore, must include the payments it has made to film producers in its SBT base.

---

[1] 1996 PA 347 also amended MCL 208.9(4)(g)(*v*) and (7)(c)(*iv*), added in 1993, to except "[f]ilm rental or royalty payments paid by a theater owner to a film distributor, a film producer, or a film distributor and producer."

The purpose of judicial interpretation of statutes is to ascertain and give effect to legislative intent. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). "If a statute is clear, it must be enforced as plainly written. However, if a statute is susceptible to more than one interpretation, judicial construction is proper to determine legislative intent. Statutory language should be construed reasonably, keeping in mind the purpose of the act." *People v Spann*, 250 Mich App 527, 530; 655 NW2d 251 (2002) (citations omitted), aff'd 469 Mich 904 (2003). Courts may consult dictionary definitions to determine the ordinary meaning of undefined statutory terms. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

The Legislature failed to define the term "film distributor" in the SBTA. The word "film" itself has multiple definitions that are used in common parlance. For instance, "film" has been defined as "a cellulose nitrate or cellulose acetate composition made in thin sheets or strips and coated with a light-sensitive emulsion for taking photographs or motion pictures" and as a "motion picture" itself. *Random House Webster's College Dictionary* (2000). Thus, the term "film distributor" could arguably apply to one who distributes motion pictures, including those distributed through the medium of videocassettes, or to one who distributes cellulose strips coated with a light-sensitive emulsion onto which motion pictures have been recorded.

In seeking to determine legislative intent on the basis of the plain language of the statute, we note that a "film distributor" could only be expected to pay royalties to a "film producer" for "copyrighted motion picture films" if a motion picture had already been recorded onto the relevant "film." MCL 208.9(4)(g)(*vii*). This suggests that it is the distribution of the motion picture, and not

the physical medium, with which the Legislature was concerned. The Legislature's use of the phrase "copyrighted motion picture films" in the statute, however, seems to suggest a different result. Specifically, the Legislature would not have needed to include the descriptive phrase "motion picture" if that descriptor had been inherent in the use of the word "film" alone. However, when read in context, it appears that the Legislature's use of the phrase "copyrighted motion picture films" was only setting forth one type of "film" a "film distributor" might pay a film producer for the use of. In fact, the Legislature indicates that a "film distributor" might also pay a film producer for other "program matter" and "signals" as well. MCL 208.9(4)(g)(*vii*). Taken together, this language indicates that the Legislature did not intend to limit the term "film distributor" to those who only distribute motion pictures on strips of emulsion-coated cellulose.

Accordingly, the language of MCL 208.9(4)(g)(*vii*) indicates that one need not distribute motion pictures on strips of emulsion-coated cellulose to be classified as a "film distributor." Nor does the plain language of the statute indicate that a film distributor has to distribute films to theaters in order to be considered a film distributor, as respondent has interpreted the statute. Nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself, *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 63; 642 NW2d 663 (2002), and courts may not speculate about the probable intent of the Legislature beyond the language expressed in the statute, *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd,* 240 Mich App 153, 173; 610 NW2d 613 (2000). Therefore, under the plain language of the statute, the Tax Tribunal correctly determined that petitioner is a film distributor

for purposes of MCL 208.9(4)(g)(*vii*) and is not required to add to its business income the royalties it pays to film producers in order to calculate its SBT base.

Even if MCL 208.9(4)(g)(*vii*) is reasonably susceptible to more than one interpretation, and we apply the rules of judicial construction, *Spann, supra* at 530, the result does not change. Respondent cites the legislative history of the SBTA royalty exceptions as support for its position that the Legislature only intended the royalty exception contained in MCL 208.9(4)(g)(*vii*) to apply to distributors of films to movie theaters and not to home videocassette distributors such as petitioner. A legislative analysis is a "generally unpersuasive tool of statutory construction." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001). "The problem with relying on bill analyses is that they do not necessarily represent the views of even a single legislator." *Id.* at 588 n 7. Nevertheless, "[c]ourts may look to the legislative history of an act, as well as to the history of the time during which the act was passed, to ascertain the reason for the act and the meaning of its provisions." *People v Schut*, 265 Mich App 446, 451; 695 NW2d 551, rev'd on other grounds 474 Mich 865 (2005); see also *People v Hall*, 391 Mich 175, 191; 215 NW2d 166 (1974).

In this regard, respondent cites a House legislative analysis of 1993 PA 105 that indicates that, following *Field Enterprises,* movie theater owners sought an amendment of the SBTA to exclude payments made by theater owners to film distributors from their SBT base. House Legislative Analysis, HB 4857, June 17, 1993, p 1. The analysis further indicates that distributors would be liable for additional taxes under the bill because it would not permit them to deduct from their tax base royalties they received from theater owners. *Id.*

According to a Senate legislative analysis of 1996 PA 347, the later legislation was intended to allow film distributors to "exclude" from their SBT base royalty payments made to film producers, such that "the bill would treat film distributors in the same manner that theater owners are treated, and generally tax the distributors in the same manner that they were taxed before" the decision in *Field Enterprises*. Senate Legislative Analysis, SB 880 (Substitute S-2), April 29, 1996, p 2.

Considering the relevant changes in the SBTA and the historical legal development of those changes,[2] respondent argues that because 1993 PA 105 was intended to alleviate the tax burden on theater owners and because 1996 PA 347 was enacted only as a result of the consequences of 1993 PA 105, the "film distributors" referred to in 1996 PA 347 must be distributors of films to theaters and not distributors of videocassettes for the home market. Contrarily, petitioner asserts that, like distributors of films to theaters, it was subjected to an unexpected tax burden following *Field Enterprises* because it had to include royalty payments it paid to film producers in its tax base, but could not subtract from its tax base payments it received from video stores and other consumers, just as other film distributors could not subtract payments they received from theaters. Considering these arguments, we conclude that, while respondent's legislative analysis is appealing, without more it cannot overcome the language of the statute itself, which suggests a contrary result, as explained above. See *Roberts, supra* at 63; *Cherry Growers, supra* at 173.

---

[2] See *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 120; 667 NW2d 880 (2003) (considering such changes in the law of construction liens in its statutory analysis).

Respondent also asserts that if the statute is interpreted as petitioner desires, the statute will have the unintended consequence of allowing petitioner to avoid taxation by sublicensing its distribution rights. If petitioner undertakes such sublicensing, then under its interpretation of the statute it can omit from its tax base the payments it makes to film producers, while also excluding as royalties the payments it receives from its sublicensees. Respondent argues that such an outcome creates a windfall for petitioner. On the other hand, petitioner argues that the Legislature intended through 1993 PA 105 and 1996 PA 347 to shift the tax burden to film producers, that under its interpretation of the statute it is not being treated any differently from other film distributors, and that the Legislature intended to place the incidence of tax on any sublicensee, who would be taxed on the payments it makes to the distributor/sublicensor. Again, considering the foregoing, we conclude that respondent's argument is insufficient to support a conclusion that the Legislature intended that only distributors of films to theaters be entitled to take advantage of MCL 208.9(4)(g)(*vii*). As the Tax Tribunal stated:

> [U]nder a pure value added tax, a firm that earns only royalty income is not taxed on the income. If such a firm has no related royalty expense, then it has no corresponding addback. This is not a windfall—it is inherent to a value added tax. It may appear unfair to allow a firm to conduct business activity within this state and pay no tax on its royalty income, but such is the nature of a value-added tax.

As noted above, this Court generally defers "to the Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing." *Michigan Milk Producers Ass'n*, *supra* at 491. Considering the foregoing legal arguments and rules of statutory construction, we conclude that the Tax Tribunal did not

commit an error of law in determining that petitioner is a film distributor for purposes of MCL 208.9(4)(g)(*vii*).

Affirmed.