KINDER MORGAN MICHIGAN, LLC v CITY OF JACKSON
ALPHA GEN POWER, LLC v CITY OF JACKSON

Docket Nos. 270136 and 270137. Submitted October 2, 2007, at Lansing. Decided November 6, 2007, at 9:00 a.m.

Kinder Morgan Michigan, L.L.C., and Alpha Gen Power, L.L.C., filed in the Michigan Tax Tribunal appeals of the city of Jackson's decision to levy property taxes against real and personal property that comprises the petitioners' electric power generating plant, which is located in a renaissance zone, for the purpose of funding the respondent's police and firefighters' pension system. The Tax Tribunal granted summary disposition in favor of the petitioners. The respondent appealed, and the appeals were consolidated.

The Court of Appeals *held*:

1. The statutory exceptions to the general rule that renaissance zone property is exempt from property taxes should not be strictly construed in favor of the taxing authority. The Legislature has expressly stated that the Renaissance Zone Act (RZA) is to be liberally construed, and although the exceptions at issue appear in the General Property Tax Act, they must be read together with the RZA because they are *in pari materia* with it.

2. The Tax Tribunal correctly ruled that taxes levied pursuant to the Fire Fighters and Police Officers Retirement Act, MCL 38.551 *et seq.*, may not be assessed against real or personal property located in a renaissance zone. The exception to the general rule that renaissance zone property is exempt from property taxes that is set forth in MCL 211.7ff(2)(b) does not apply in the case at bar because a governmental unit's obligation to fund a pension system for police and firefighters is not an obligation "pledging the unlimited taxing power of the unit," a phrase that indicates an application to public indebtedness.

3. The Tax Tribunal did not err by failing to defer to the State Tax Commission's interpretation of MCL 211.7ff(2)(b) because that interpretation was contrary to the intent of the Legislature. Federal standards governing agency review are inapplicable when determining whether a state agency is entitled to deference with respect to its interpretation of a state statute.

4. The exemption of renaissance zone property from liability for taxes levied to fund pensions for police and firefighters is not an unconstitutional impairment of a public pension because that exemption leaves sufficient other properties in municipalities on which such taxes may be lawfully collected.

Affirmed.

1. TAXATION — RENAISSANCE ZONE ACT — EXCEPTIONS.

The statutory exceptions to the general rule that renaissance zone property is exempt from property taxes are not strictly construed in favor of the taxing authority because, although those exceptions appear in the General Property Tax Act, they are *in pari materia* with the Renaissance Zone Act, which must be liberally construed (MCL 125.2689[2][a], 125.2694, and 211.7ff[2]).

2. TAXATION — RENAISSANCE ZONE ACT — EXCEPTIONS.

The statutory exception to the general rule that renaissance zone property is exempt from property taxes for ad valorem property taxes specifically levied for the payment of principal and interest of obligations pledging the unlimited taxing power of the local governmental unit does not apply to taxes levied to fund a pension system for police and firefighters (MCL 211.7ff[2][b]).

3. CONSTITUTIONAL LAW — RENAISSANCE ZONE ACT — EXCEPTIONS — IMPAIRMENTS OF PUBLIC PENSIONS.

The exemption of renaissance zone property from liability for taxes levied to fund pensions for police and firefighters is not an unconstitutional impairment of a public pension (Const 1963, art 9, § 24; MCL 211.7ff[2]).

*Mika Meyers Beckett & Jones PLC* (by *Andrea D. Crumback* and *William A. Horn*) for Kinder Morgan Michigan, LLC, and Alpha Gen Power, LLC.

*Julius A. Giglio*, City Attorney, and *Susan G. Murphy*, Deputy City Attorney, for the city of Jackson.

Amicus Curiae:

*George G. Constance*, City Attorney, and *William H. Hackel III*, Assistant City Attorney, for the city of Warren.

Before: JANSEN, P.J., and FITZGERALD and MARKEY, JJ.

JANSEN, P.J. In these consolidated cases, respondent appeals by right the Tax Tribunal's grant of summary disposition in favor of petitioners. The Tax Tribunal ruled that petitioners' renaissance zone property is exempt from real and personal property taxes levied to support respondent's pension system for firefighters and police officers. We affirm.

I

Together, petitioners own the real and personal property that makes up an electric power generating plant located within the city of Jackson. It is undisputed that the plant is situated in a renaissance zone, established pursuant to Michigan's Renaissance Zone Act, MCL 125.2681 *et seq.*

The Fire Fighters and Police Officers Retirement Act, 1937 PA 345, MCL 38.551 *et seq.*, authorizes a municipality to collect property taxes (hereinafter "PA 345 taxes") for the purpose of supporting a firefighters and police officers pension system (hereinafter "PA 345 pension"). Respondent established a PA 345 pension system several years ago, and has since that time collected property taxes to support it. Before 2005, respondent had never levied PA 345 taxes against petitioners' renaissance zone property. However, respondent received a letter from the State Tax Commission's property tax division in 2004, which opined that PA 345 taxes should be collected from all renaissance zone properties. That letter provided in relevant part:

> The following is a list of what should be levied on qualified Renaissance Zone property. Please make sure you are levying the appropriate millage.

* * *

> Any obligations pledging the unlimited taxing power of
> the local unit such as Court Order Judgements [sic] or PA
> 345 Pension, MCL 211.7ff(2)(b).

Accordingly, respondent notified petitioners in 2005 that it would begin to levy PA 345 taxes against their personal and real property.

Petitioners received their summer 2005 tax bills, each of which included a levy of 4.12 mills to fund the PA 345 pension. Petitioners protested the levy before the July board of review. However, noting that there had been no clerical errors or mutual mistakes of fact, the board of review denied petitioners' requests to remove the levy from their tax bills.

Petitioners appealed to the Tax Tribunal, arguing that PA 345 taxes could not be lawfully levied against their renaissance zone property. Petitioners contended that only those property taxes enumerated in MCL 211.7ff(2) could be levied against renaissance zone property, and that PA 345 taxes were not included among the taxes described by the statute.

The Tax Tribunal granted summary disposition in favor of petitioners. The tribunal ruled that because PA 345 taxes do not fall within the scope of the taxes described in MCL 211.7ff(2), respondent lacked the authority to levy PA 345 taxes against petitioners' renaissance zone property. The tribunal also ruled that it was not bound by the State Tax Commission's contrary interpretation of the statute.[1]

---

[1] Petitioners' appeal to the Tax Tribunal originally related to tax year 2005 only. However, the Tax Tribunal subsequently allowed amendment of the petitions, and amended its own order as well, to include tax year 2006. We perceive no error in this regard. See MCL 205.737(5)(a) (stating that "[i]f the tribunal has jurisdiction over a petition alleging that the

II

In the absence of fraud, we review the Tax Tribunal's decision "for misapplication of the law or adoption of a wrong principle." *Wexford Med Group v Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006). The Tax Tribunal's factual findings are conclusive "if they are supported by 'competent, material, and substantial evidence on the whole record.' " *Id.*, quoting *Michigan Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994). However, because statutory interpretation is involved in this matter, we review the tribunal's decision de novo. *Wexford Med Group, supra* at 202.

Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). "To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language." *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). The words contained in the statute provide us with the most reliable evidence of the Legislature's intent. *Shinholster, supra* at 549. Terms used in a statute must be given their plain and ordinary meaning, and it is appropriate to consult a dictionary for definitions. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). "When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted." *Lash, supra* at 187. However, when a statute is ambiguous on its face and reasonable minds can differ with respect to its meaning, judicial construction is necessary to determine the

property is exempt from taxation, the appeal for each subsequent year for which an assessment has been established shall be added automatically to the petition").

intent of the Legislature. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999).

III

Petitioners argue that the Tax Tribunal correctly ruled that PA 345 taxes may not be levied against real and personal property located in a renaissance zone. Conversely, respondent and amicus curiae argue that PA 345 taxes may be collected from renaissance zone property pursuant to MCL 211.7ff(2)(b). We agree with petitioners.

Real and personal property located in a renaissance zone is generally exempt from property taxes. MCL 211.7ff(1). However, there are exceptions to this general rule. Those exceptions are contained in MCL 211.7ff(2), which provides:

> Real and personal property in a renaissance zone is not exempt from collection of the following:
>
> (a) A special assessment levied by the local tax collecting unit in which the property is located.
>
> (b) Ad valorem property taxes specifically levied for the payment of principal and interest of obligations approved by the electors or obligations pledging the unlimited taxing power of the local governmental unit.
>
> (c) A tax levied under section 705, 1211c, or 1212 of the revised school code, 1976 PA 451, MCL 380.705, 380.1211c, and 380.1212.

All parties agree that the PA 345 taxes at issue in this appeal are not "special assessment[s]" within the meaning of MCL 211.7ff(2)(a) or "tax[es] levied under . . . the revised school code" within the meaning of MCL 211.7ff(2)(c). Therefore, the sole issue on appeal is whether PA 345 taxes constitute "[a]d valorem property taxes specifically levied for the payment of principal and

interest of obligations approved by the electors or obligations pledging the unlimited taxing power of the local governmental unit" within the meaning of MCL 211.7ff(2)(b).

A

As an initial matter, we reject the argument of amicus curiae that MCL 211.7ff should be strictly construed in favor of the taxing authority rather than in favor of the taxpayer. We fully acknowledge that tax exemption statutes must generally be narrowly construed in favor of the taxing authority. *Wexford Med Group, supra* at 204; *Nat'l Ctr for Mfg Sciences, Inc v Ann Arbor*, 221 Mich App 541, 546; 563 NW2d 65 (1997). "However, this rule does not permit a strained construction adverse to the Legislature's intent." *Nat'l Ctr for Mfg Sciences, supra* at 546.

The Legislature has decreed that the Renaissance Zone Act "shall be construed liberally to effectuate the legislative intent and the purposes of this act," and that "all powers granted by this act shall be broadly interpreted to effectuate the intent and purposes of this act and not as a limitation of powers." MCL 125.2694. The Legislature has expressly set forth the purposes of the Renaissance Zone Act in MCL 125.2682:

> The legislature of this state finds and declares that there exists in this state continuing need for programs to assist certain local governmental units in encouraging economic development, the consequent job creation and retention, and ancillary economic growth in this state. To achieve these purposes, it is necessary to assist and encourage the creation of renaissance zones and provide temporary relief from certain taxes within the renaissance zones.

It is clear from this statutory language that the intent of the Legislature was to grant significant tax relief to

property situated in renaissance zones. It is also clear that the Legislature intended the act to be liberally construed to effectuate this purpose. In light of the Legislature's specific pronouncement in MCL 125.2694, the general rule requiring narrow construction of tax exemption statutes does not apply in the context of the Renaissance Zone Act. *Nat'l Ctr for Mfg Sciences, supra* at 546.

Amicus asserts that because MCL 211.7ff is part of the General Property Tax Act rather than the Renaissance Zone Act, MCL 125.2694 should not control our analysis and the statute should not be liberally construed. However, it is clear that MCL 211.7ff shares a common purpose with the Renaissance Zone Act and is necessary for its proper implementation. Indeed, MCL 125.2689(2)(a) specifically refers to MCL 211.7ff as one of the exemption statutes that must be read in concert with the Renaissance Zone Act. Statutes that relate to the same subject or share a common purpose are *in pari materia*, and must be read together as one law even if they contain no reference to one another and were enacted on different dates. *Apsey v Mem Hosp*, 477 Mich 120, 129 n 4; 730 NW2d 695 (2007); *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998). Because MCL 211.7ff and the Renaissance Zone Act are *in pari materia*, MCL 211.7ff must be liberally construed to effectuate the purposes of the Renaissance Zone Act. MCL 125.2694. Consistent with the Legislature's directive, we must construe MCL 211.7ff with an eye toward securing tax relief for real and personal property located in renaissance zones.

B

As we have already stated, the central question in this appeal is whether property taxes levied to fund a

PA 345 pension fall within the scope of MCL 211.7ff(2)(b). We must turn to the language of the statute to answer this question. As noted earlier, MCL 211.7ff(2)(b) provides that real and personal property located in a renaissance zone is not exempt from "[a]d valorem property taxes specifically levied for the payment of principal and interest of obligations approved by the electors or obligations pledging the unlimited taxing power of the local governmental unit." The parties disagree concerning the proper interpretation of this language.

Petitioners suggest that the language should be interpreted as meaning that renaissance zone property is (1) not exempt from property taxes levied for the payment of principal and interest of obligations approved by the electors and (2) not exempt from property taxes levied for the payment of principal and interest of obligations pledging the unlimited taxing power of the local governmental unit. Petitioners contend that the word "obligations," as used in MCL 211.7ff(2)(b), encompasses only bonds and debt obligations. Therefore, petitioners argue that PA 345 taxes fall outside the scope of MCL 211.7ff(2)(b) because they are not levied for the purpose of satisfying public indebtedness. Alternatively, petitioners argue that PA 345 taxes do not fall within the meaning of MCL 211.7ff(2)(b) because they are not levied to pay "principal and interest," but rather to fund a PA 345 pension, which is not a debt but a general operating expense of the municipality.

In contrast, respondent and amicus suggest that the language of MCL 211.7ff(2)(b) should be interpreted as meaning that renaissance zone property is (1) not exempt from property taxes levied for the payment of principal and interest of obligations approved by the

electors and (2) not exempt from property taxes levied for the payment of obligations pledging the unlimited taxing power of the local governmental unit. Thus, respondent and amicus maintain that even if PA 345 taxes are not strictly levied to pay "principal and interest," they are nonetheless included within the scope of MCL 211.7ff(2)(b) because PA 345 pensions are "obligations pledging the unlimited taxing power of the local governmental unit." In support of this proposition, respondent and amicus contend that the definition of the word "obligations" in MCL 211.7ff(2)(b) is not merely limited to bonds and debt obligations, but that the word's definition is broad enough to encompass any type of responsibility or undertaking, including the obligation to fund and operate a PA 345 pension.

We have thoroughly reviewed the parties' arguments in this regard and have considered the differing definitions of the word "obligations." We have also examined the grammar, punctuation, and sentence structure of MCL 211.7ff(2)(b). In short, we conclude that the language of MCL 211.7ff(2)(b) is ambiguous because reasonable minds could disagree regarding its meaning and it is equally susceptible to two or more different interpretations. *Shelby Charter Twp v State Boundary Comm*, 425 Mich 50, 73; 387 NW2d 792 (1986). Therefore, statutory construction is necessary to discern and effectuate the intent of the Legislature. *In re MCI*, *supra* at 411.

Respondent appears to concede that PA 345 taxes are not "specifically levied for the payment of principal and interest of obligations approved by the electors" within the meaning of the first clause of MCL 211.7ff(2)(b),[2] but argues that they may nonetheless be collected on

---

[2] We agree that PA 345 taxes do not fall within the scope of the first clause of MCL 211.7ff(2)(b) because even if PA 345 pensions are "obliga-

renaissance zone property because they are levied to fund "obligations pledging the unlimited taxing power of the local governmental unit." Even assuming arguendo that respondent is correct in arguing that the phrase "principal and interest" applies only to the phrase "obligations approved by the electors" and not to the phrase "obligations pledging the unlimited taxing power of the local governmental unit," we conclude that PA 345 pensions are not "obligations pledging the unlimited taxing power of the local governmental unit."

We acknowledge that local units of government do, indeed, have "an obligation" to fund their PA 345 pensions. *Shelby Twp Police & Fire Retirement Bd v Shelby Charter Twp*, 438 Mich 247, 261; 475 NW2d 249 (1991). However, the final clause of MCL 211.7ff(2)(b) does not apply to all obligations whatsoever. Instead, the phrase "obligations pledging the unlimited taxing power of the local governmental unit" describes only specific obligations that *pledge* the full taxing power of the local unit of government. In the statutory phrase at issue, the present participle "pledging" is used as an adjective modifying the noun "obligations." A pledge is "the act of providing something as security for a debt or obligation." Black's Law Dictionary (7th ed). As this definition makes clear, "pledging" occurs in the context of a debt, and a pledge is the mechanism by which the indebted party secures its promise to repay the indebtedness. Thus, "obligations pledging the unlimited taxing power of the local governmental unit" are necessarily obligations by which a municipality pledges its unlimited taxing power as security for the repayment of a debt. Stated another way, the "obligations" described

---

tions approved by the electors," PA 345 taxes are not "specifically levied for the payment of principal and interest . . . ."

in the final clause of MCL 211.7ff(2)(b) are limited to those evidencing public indebtedness.

This conclusion is further supported by legislative analyses prepared at the time MCL 211.7ff was enacted. We acknowledge that legislative analyses are "generally unpersuasive tool[s] of statutory construction." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001). This is because legislative analyses are prepared by House and Senate staff members and do not necessarily represent the views of any individual legislator. *Id.* at 588 n 7. "Nevertheless, '[c]ourts may look to the legislative history of an act, as well as to the history of the time during which the act was passed, to ascertain the reason for the act and the meaning of its provisions.' " *Twentieth Century Fox Home Entertainment, Inc v Dep't of Treasury*, 270 Mich App 539, 546; 716 NW2d 598 (2006) (citation omitted). Indeed, legislative bill analyses do have probative value in certain, limited circumstances. See *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 406 n 12; 578 NW2d 267 (1998); *Kern v Blethen-Coluni*, 240 Mich App 333, 338 n 1; 612 NW2d 838 (2000); *Seaton v Wayne Co Prosecutor*, 233 Mich App 313, 321 n 3; 590 NW2d 598 (1998).

MCL 211.7ff was added by way of 1996 PA 469. 1996 PA 469 was originally introduced as Senate Bill 670, and went through several changes and iterations before it was ultimately enacted by the Legislature. As originally introduced, Senate Bill 670 did not include the final language that now makes up MCL 211.7ff(2). However, the language of the current MCL 211.7ff(2) was included in House Substitute H-3. With regard to that language, the legislative analysis of Substitute H-3 provided:

> Senate Bill 670 would amend the General Property Tax Act . . . to exempt real property in a [renaissance] zone

from property taxes and to exempt personal property that was situated within a [renaissance] zone for at least half of the tax year. Real and personal property would not be exempt from special assessments; *taxes levied to pay principal and interest due on debt obligations*; "enhancement" mills levied by a local school district or an intermediate school district; or school building sinking fund mills. [House Legislative Analysis, Senate Bill 670 (Substitute H-3), November 19, 1996 (emphasis added).]

Nearly identical language was also contained in a supplemental legislative analysis prepared after both houses of the Legislature had passed Senate Bill 670 and the bill had been enrolled. See House Legislative Analysis, Senate Bill 670 (As Enrolled), January 3, 1997. Although not dispositive, these legislative analyses provide persuasive evidence that the Legislature intended to include only "taxes levied to pay principal and interest due on debt obligations" among the property taxes described in MCL 211.7ff(2)(b).

Lastly, we cannot disregard the conclusion of the Tax Tribunal itself. The tribunal ruled in favor of petitioners and concluded that the taxes levied to fund respondent's PA 345 pension did not fall within the scope of MCL 211.7ff(2)(b) because PA 345 pensions are not debt obligations. It is beyond serious dispute that the Tax Tribunal is at least partially responsible for administering and enforcing the General Property Tax Act. "[T]his Court generally defers 'to the Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing.' " *Twentieth Century Fox, supra* at 548, quoting *Michigan Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 491; 618 NW2d 917 (2000).

We acknowledge that PA 345 pensions constitute "obligations" of local units of government. *Shelby Twp Police & Fire, supra* at 261; see also Const 1963, art 9,

§ 24. However, they are quite simply not *debt* obligations. We agree with petitioners that the expense of funding a PA 345 pension is an accrued liability or general operating expense of the local unit of government, and is not a *debt* within the common understanding of that term.

Bearing in mind that we must liberally construe MCL 211.7ff in favor of securing tax relief, we conclude that taxes levied to fund PA 345 pensions are not levied to pay "obligations pledging the unlimited taxing power of the local governmental unit" within the meaning of the final clause of MCL 211.7ff(2)(b) because they are levied to pay an accrued liability or general expense of government rather than to pay public indebtedness. In accordance with MCL 211.7ff(2)(b), property taxes levied to fund PA 345 pensions may not be collected from real and personal property situated within renaissance zones.

C

Respondent and amicus argue that the Tax Tribunal erred by failing to defer to the interpretation of MCL 211.7ff(2)(b) contained in the State Tax Commission's 2004 letter. Respondent contends that the tribunal should have given substantial deference to the agency's interpretation pursuant to *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837, 843-845; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

Respondent's reliance on the federal standard of agency review is misplaced because the issue here is whether a *state* agency was entitled to deference with respect to its interpretation of a *state* statute. We recognize that, in Michigan, the longstanding and consistent interpretation of a statute by an agency charged with its administration is entitled to considerable

weight unless that interpretation is clearly erroneous. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 50; 703 NW2d 822 (2005). However, a longstanding administrative interpretation cannot overcome the intent of the Legislature. *Howard Pore, Inc v State Comm'r of Revenue*, 322 Mich 49, 66; 33 NW2d 657 (1948); *Buttleman v State Employees' Retirement Sys*, 178 Mich App 688, 690; 444 NW2d 538 (1989). As we have already determined, in drafting MCL 211.7ff(2)(b) the Legislature did not intend for taxes such as those levied to support PA 345 pensions to be levied against renaissance zone property. Accordingly, the Tax Tribunal properly declined to defer to the State Tax Commission's contrary interpretation of the statute.[3]

D

Amicus argues that exempting renaissance zone property from liability for PA 345 taxes is unconstitutional because such an exemption impairs a public pension in violation of Const 1963, art 9, § 24. Amicus contends that MCL 211.7ff(2)(b) should be interpreted as allowing the collection of PA 345 taxes on renaissance zone property because a statute must be interpreted so as to avoid constitutional infirmity. See *Bouser v Lincoln Park*, 83 Mich App 167, 173; 268 NW2d 332 (1978).

The parties have not addressed this issue on appeal. "Absent exceptional circumstances, amicus curiae cannot raise an issue that has not been raised by the parties." *People v Hermiz*, 462 Mich 71, 76; 611 NW2d 783 (2000) (opinion of TAYLOR, J.). Nor does it appear that this issue was raised before the Tax Tribunal. We

---

[3] We also note that the 2004 letter from the State Tax Commission's property tax division did not have the force of law because it was not a properly promulgated administrative rule. *Danse Corp v Madison Hts*, 466 Mich 175, 181; 644 NW2d 721 (2002).

generally will not address arguments that have not been preserved for appellate review. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

At any rate, we note that the exemption of renaissance zone property from liability for PA 345 taxes does not impair a public pension. MCL 211.7ff(2)(b) does not bar the levy of PA 345 taxes against all property within a municipality, but only bars the levy of PA 345 taxes against renaissance zone property. This leaves sufficient other properties in any municipality from which PA 345 taxes may be lawfully collected. We find no constitutional error in this regard.

IV

In light of our resolution of the issues, we need not consider the alternative argument raised by petitioners on appeal. Nor do we consider the jurisdictional issue raised in respondent's reply brief. Reply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief. MCR 7.212(G); *Blazer Foods, Inc v Restaurant Properties, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003).

Affirmed.