*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDREW P. CAMPBELL,

Petitioner-Appellee,

v

MICHIGAN DEPARTMENT OF TREASURY,

Respondent-Appellant.

FOR PUBLICATION
February 4, 2020
9:05 a.m.

No. 350248
Tax Tribunal
LC No. 18-004009-TT

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

TUKEL, J.

Respondent appeals by right the order of the Michigan Tax Tribunal (MTT) entitling petitioner's real property to a 100% Principal Residence Exemption (PRE) for tax year 2017. We affirm.

## I. UNDERLYING FACTS

Petitioner is a lifelong Michigan resident who purchased property in Arizona in 2016. When petitioner purchased the Arizona property, the state of Arizona automatically gave him a $600 credit on his tax bill without petitioner's knowledge, apparently because it assumed the Arizona property was petitioner's primary residence. Petitioner claimed a PRE for his Michigan property when he filed his taxes for tax year 2017, but respondent denied the exemption because petitioner had received a similar exemption from Arizona for that same tax year. After learning that Arizona considered his Arizona residence to be his primary residence, petitioner informed the Maricopa County, Arizona treasurer that he was not an Arizona resident. Petitioner's Arizona residency status was changed "within 24 hours." Despite Arizona changing petitioner's residency status, however, respondent still refused to grant petitioner a PRE for the Michigan property for tax year 2017.

Petitioner appealed this denial, and an "informal conference" was conducted in August 2018 in which the parties participated by telephone. The referee recommended that the PRE for the Michigan property remain denied, and respondent's Director of the Bureau of Tax Policy adopted the referee's recommendation. Petitioner then filed a Tax Tribunal petition against respondent in November 2018. The MTT held a telephonic hearing in May 2019 and issued a

written order in July 2019. The MTT found that petitioner did not apply for the Arizona property tax exemption, but that Arizona had automatically given it to him at closing. Nevertheless, the MTT found that even though petitioner had not applied for the exemption, under MCL 211.7cc(3) he still "claimed" an exemption similar to the PRE in another state for tax year 2017. See n 1, *infra*. Accordingly, the property did not qualify. Nonetheless, the MTT found that under MCL 211.7cc(4), petitioner's previous PRE for the Michigan property remained in effect through December 31, 2017. Thus, the tribunal ruled that the Michigan property was entitled to a 100% PRE for the 2017 tax year.

Respondent filed a motion for reconsideration that the MTT denied. This appeal followed.

## II. STANDARD OF REVIEW

Unless there is fraud, this Court's review of MTT "decisions is limited to determining whether the MTT erred in applying the law or adopted a wrong legal principle." *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 627; 752 NW2d 479 (2008). If this Court's "review requires the interpretation and application of a statute, that review is de novo." *Power v Dep't of Treasury*, 301 Mich App 226, 230; 835 NW2d 662 (2013). However, "[t]his Court will generally defer to the Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing." *Twentieth Century Fox Home Entertainment, Inc v Dep't of Treasury*, 270 Mich App 539, 541; 716 NW2d 598 (2006) (quotation marks and citation omitted; alteration in original). Additionally, " 'statutes exempting persons or property from taxation must be narrowly construed in favor of the taxing authority.' " *Power*, 301 Mich App at 230, quoting *Liberty Hill Housing Corp v Livonia*, 480 Mich 44, 49; 746 NW2d 282 (2008). Finally, "[w]e deem the tribunal's factual findings conclusive if they are supported by 'competent, material, and substantial evidence on the whole record.' " *Liberty Hill*, 480 Mich at 49 (quotation marks and citations omitted).

## III. ANALYSIS

As an initial matter, whether petitioner was properly denied the PRE is not at issue in this appeal. Respondent takes no issue with the portion of the tribunal's decision that ruled the PRE was properly denied. The issue is whether the PRE, after being denied, should have continued through December of that tax year, 2017, or whether it should have ceased immediately upon the granting of the Arizona exemption.

PREs are created by and addressed under MCL 211.7cc of the General Property Tax Act, MCL 211.1 *et seq.*, which provides:

> (1) A principal residence is exempt from the tax levied by a local school district for school operating purposes to the extent provided under . . . MCL 380.1211, if an owner of that principal residence claims an exemption as provided in this section. Notwithstanding the tax day provided in [MCL 211.2], the status of property as a principal residence shall be determined on the date an affidavit claiming an exemption is filed under subsection (2). [MCL 211.7cc(1).]

The property owner is required to file an affidavit which, among other provisions, requires the owner to "state that the property is owned and occupied as a principal residence by that owner of

the property on the date that the affidavit is signed and shall state that the owner has not claimed a substantially similar exemption, deduction, or credit on property in another state." MCL 211.7cc(2). There are a number of exclusions to a claimed PRE. See MCL 211.7cc(3). In relevant part, MCL 211.7cc(3) states:

> For taxes levied after December 31, 2002, *a person is not entitled to an exemption under this section in any calendar year* in which any of the following conditions occur:
>
> (a) *That person has claimed a substantially similar exemption, deduction, or credit, regardless of amount, on property in another state.* Upon request . . . a person who claims an exemption under this section shall, within 30 days, file an affidavit on a form . . . stating that the person has not claimed a substantially similar exemption, deduction, or credit on property in another state. A claim for a substantially similar exemption, deduction, or credit in another state occurs at the time of the filing or granting of a substantially similar exemption, deduction, or credit in another state. If the assessor of the local tax collecting unit, the department of treasury, or the county denies an existing claim for exemption under this section, an owner of the property subject to that denial cannot rescind a substantially similar exemption, deduction, or credit claimed in another state in order to qualify for the exemption under this section for any of the years denied.
>
> (b) Subject to subdivision (a), *that person or his or her spouse owns property in a state other than this state for which that person or his or her spouse claims an exemption, deduction, or credit substantially similar to the exemption provided under this section*, unless that person and his or her spouse file separate income tax returns. [Emphasis added.]

MCL 211.7cc(4), which is at the heart of this appeal, provides:

> Upon receipt of an affidavit filed under subsection (2) and unless the claim is denied under this section, the assessor shall exempt the property from the collection of the tax levied by a local school district for school operating purposes to the extent provided under [MCL 380.1211] as provided in subsection (1) *until December 31 of the year in which the property is transferred or*, except as otherwise provided in subsections (5), (32), and (33), *is no longer a principal residence as defined in* [MCL 211.7dd], *or the owner is no longer entitled to an exemption* as provided in subsection (3). [Emphasis added.]

The critical issue in this case is the meaning of the phrase "until December 31 of the year in which" certain events occur, and whether that language applies only to the immediately connected phrase "the property is transferred" or whether it also applies to the following phrases, "is no longer a principal residence" and "the owner is no longer entitled to an exemption." Respondent asserts that the December 31 language modifies *only* the immediately connecting phrase and not the two following phrases. Accordingly, respondent argues, petitioner should not have received a PRE for 2017 because, upon his no longer being entitled to the exemption, the PRE immediately ceased.

This Court and our Supreme Court have not previously addressed whether the December 31 language in MCL 211.7cc(4) applies to one, two, or all three of the circumstances set forth in the statute. Accordingly, this is an issue of first impression.

"When interpreting a statute, [this Court] must ascertain the Legislature's intent," which is accomplished "by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written." *Griffin v Griffin (Amended Opinion)*, 323 Mich App 110, 120; 916 NW2d 292 (2018) (quotation marks and citation omitted). If a statute is unambiguous, it must be applied as plainly written. *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 971 NW2d 584 (2018). This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted). Additionally, this Court should "consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. As far as possible, effect should be given to every phrase, clause, and word in the statute." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019) (citation omitted).

The "last antecedent" rule "provides that a modifying clause is confined to the last antecedent unless something in the subject matter or dominant purpose [of the statute] requires a different interpretation." *Dessart v Burak*, 470 Mich 37, 41; 678 NW2d 615 (2004) (quotation marks and citations omitted; alteration in original). However, this rule does not apply when the modifying clause is set off by punctuation, "such as a comma." *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 71; 718 NW2d 784 (2006), overruled on other grounds *Regents of Univ of Michigan v Titan Ins Co*, 487 Mich 289; 791 NW2d 897 (2010), overruled on other grounds *Joseph v Auto Club Ins Ass'n*, 491 Mich 200; 815 NW2d 412 (2012). A dependent clause set off by commas from the rest of the sentence is not to be viewed as an independent clause operating separately but, rather, as "part of the complex sentence overall." See *In re AGD*, 327 Mich App at 346-347. Finally, the word "or" is a disjunctive word that is "used to indicate a disunion, a separation, an alternative." *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 35; 878 NW2d 799 (2016) (quotation marks and citations omitted).

The principal statutory provision at issue, MCL 211.7cc, thoroughly and comprehensively addresses the availability and mechanism for seeking and granting a PRE. The statute first states the general rule that "[a] principal residence is exempt from the tax levied . . . if an owner of that principal residence claims an exemption as provided in this section." MCL 211.7cc(1). Subsection (2) provides that an exemption, once granted, continues until an event makes the property ineligible for the exemption, without any requirement that the owner do anything further to maintain the exemption. See MCL 211.7cc(2) ("Except as otherwise provided in subsection (5) . . . an owner of property may claim 1 exemption under this section . . . for the immediately succeeding summer tax levy *and all subsequent tax levie*s . . . [and] for the immediately succeeding winter tax levy *and all subsequent tax levies . . .*") (emphasis added).

Subsection 3 then sets forth specific limitations barring an exemption. Those exceptions include the situation involved here, in which the person "has claimed a substantially similar exemption, deduction, or credit, regardless of amount, on property in another state." MCL

211.7cc(3)(a).[1] An exemption also is not available if the person files a nonresident Michigan income tax return, MCL 211.7cc(3)(c), or the person has filed an income tax return in another state as a resident, MCL 211.7cc(3)(d).

Subsection 4 is the critical provision for this appeal.[2] That subsection involves exemptions which are subsequently lost because they no longer qualify as exemptions, and defines the date on which the effectiveness of such an exemption ceases. Under subsection (4), once an exemption is validly begun through the filing of an affidavit and provided that the claim is not denied under any provision of section 211.7cc, "the assessor shall exempt the property from the collection of the tax . . . until December 31 of the year in which the property is transferred or, except as otherwise provided in subsections (5), (32), and (33), is no longer a principal residence as defined in section 7dd, or the owner is no longer entitled to an exemption as provided in subsection (3)." Respondent argues that the language "until December 31 of the year in which" applies only to the first of the situations set forth in that section, *i.e.*, when the property is transferred, and the other phrases involving the filing of tax returns and the catch-all disallowance of certain exemptions, are not modified by the December 31 language. Under this view, subsection (4) essentially states as follows:

If the exemption is proper, it continues until:

---

[1] In the trial court, petitioner asserted and respondent did not contest that the exemption in Arizona was granted without petitioner's knowledge or request, and the tribunal accepted that fact. Whether or not petitioner sought the exemption is not relevant to whether or not he "claimed a substantially similar exemption, deduction, or credit, regardless of amount, on property in another state," MCL 211.7cc(3)(a). As a matter of law, the granting of the exemption in Arizona constituted a "claim" because "[a] claim for a substantially similar exemption, deduction, or credit in another state occurs at the time of the filing or granting of a substantially similar exemption, deduction, or credit in another state." *Id*. Regardless of whether petitioner sought or even knew of the granting of the exemption in Arizona, the exemption undisputedly was granted. And once the Arizona exemption was granted and the Michigan exemption denied, "an owner of the property subject to that denial cannot rescind a substantially similar exemption, deduction, or credit claimed in another state in order to qualify for the exemption under this section for any of the years denied." *Id*.

[2] That section provides:

Upon receipt of an affidavit filed under subsection (2) and unless the claim is denied under this section, the assessor shall exempt the property from the collection of the tax levied by a local school district for school operating purposes to the extent provided under [MCL 380.1211] as provided in subsection (1) until December 31 of the year in which the property is transferred or, except as otherwise provided in subsections (5), (32), and (33), is no longer a principal residence as defined in [MCL 211.7dd], or the owner is no longer entitled to an exemption as provided in subsection (3).

-5-

(I) the property is transferred, in which case the exemption is valid through December 31 of the year in which the property is transferred; or

(II) the property is no longer a principal residence, in which case the exemption is valid until the time at which the property ceases being a principal residence; or

(III) if the owner is no longer entitled to an exemption under subsection (3) other than because the property is transferred, the exemption is valid until the time at which the property is transferred.

Petitioner's exemption comes within subsection (4). Subsection (4) incorporates by reference any exemption under subsection (3) to which the person is no longer entitled; subsection (3) specifically delineates that an exemption is lost if a substantially similar exemption is granted in another state. Reading the incorporated portion of subsection (3) in conjunction with subsection (4), petitioner lost his exemption due to the granting of the Arizona exemption. The only question is when that loss of that exemption became effective. Under respondent's reading of the statute, petitioner's exemption would have become ineffective upon the granting of the Arizona exemption, rather than on December 31, because in respondent's view, the December 31 language applies only to the first situation set forth in subsection (4) (transfer of the property), and not the later provision of subsection (4) applicable here (the owner is no longer entitled to an exemption as provided in subsection (3)). Respondent's position fails for a number of reasons.

To begin with, consistent with basic rules of statutory interpretation, subsection 4 should be read in a way that harmonizes with the rest of the statute. See, e.g., *Radina v Wieland Sales, Inc*, 297 Mich App 369, 373; 824 NW2d 587 (2012) ("[i]n determining the Legislature's intent, statutory provisions must be read in the context of the whole statute and harmonized with the statute's other provisions."). When examined in light of the preceding subsections, subsection 4 clearly works in harmony with them to create a uniform taxation scheme that promotes ease of administration. As noted, subsection 1 states the general rule that an exemption is available under certain circumstances; subsection 2 provides that a properly granted exemption generally continues without requiring any further action by the owner; subsection 3 creates carve-outs or exceptions under which an exemption is not permitted; and subsection 4 provides a uniform formula for determining the point at which a valid exemption which has become invalid shall cease to apply.

Respondent's interpretation would destroy the uniformity which subsection 4 seemingly created for the implementation of the phasing out of no longer valid exemptions. Under respondent's view, for example, if fifty home owners bought property in another state and received an exemption in each of those other states, all of the Michigan properties would lose their exemptions, but such exemptions would be lost on each of the various dates on which the out-of-state exemptions were issued. The legislature was evidently concerned with the difficulty which taxing authorities would have in trying to keep track of such varying dates. Thus, in subsection 2, the legislature took great pains to establish a clear and easily administered comprehensive formula for a uniform effective date of an exemption. That formula provides that an owner may claim an exemption if the affidavit is filed "on or before June 1 for the immediately succeeding summer tax levy . . ."; and the formula provides that an owner may claim an exemption if the affidavit is filed "on or before November 1 for the immediately succeeding winter tax levy." There is no ambiguity

in that scheme, and it makes the outcome uniform regardless of filing date, so long as the filing takes place prior to the deadline. As we read subsection 4, it provides the mirror image to subsection 2, providing a uniform date not for the commencement of an exemption but for its termination. Respondent's reading of the statute would destroy that uniformity and ease of administration for taxing authorities. See *Heidelberg Bldg, LLC v Dept of Treasury*, 270 Mich App 12, 19; 714 NW2d 664 (2006) (holding that ease of administration is a legitimate government purpose for a tax statute).

Given the clarity with which the legislature spoke in creating a uniform date regarding the commencement of exemptions, and given the statutory language at issue, we do not believe that the legislature intended for the cessation of exemptions to have no such uniform application. Indeed, if respondent's position was correct, the statute would be lacking in significant direction to taxing authorities as to how to proceed. Would authorities prorate taxes depending on the percentage of the year which already had passed when an exemption ceased to be effective? Or would they use some other formula? And would there be any statutory basis for requiring all tax officials from across the state to use the same formula? The statute is silent as to those questions. Given the overall structure and comprehensiveness of MCL 211.7cc, particularly in subsection 2, we interpret that lack of direction in the statute as to those questions to bespeak a legislative intent that any and all exemptions which are lost and which fall under subsection (4) continue through December 31 of the year in which such an exemption is lost, to maintain uniformity and to ease administration.

In addition, the last antecedent rule supports reading December 31 as modifying all of the events in subsection 4 which terminate an exemption. The "last antecedent" rule "provides that a modifying clause is confined to the last antecedent, unless something in the subject matter or dominant purpose [of the statute] requires a different interpretation." *Dessart v Burak*, 470 Mich 37, 41; 678 NW2d 615 (2004) (quotation marks and citations omitted; alteration in original). In this case, the last antecedent regarding the December 31 language relates to transfer of the property. However, as noted, the dominant purpose and structure of the statute supports reading subsection 4 in conjunction with the other sections of the statute to provide uniform rules for the commencement and termination of exemptions, thus making the last antecedent rule inapplicable.

In addition, the last antecedent rule does not apply when the modifying clause is set off by punctuation, "such as a comma." *Cameron*, 476 Mich at 71. A dependent clause set off by commas from the rest of the sentence is not to be viewed as an independent clause operating separately, but rather, as "part of the complex sentence overall." See *In re AGD*, 327 Mich App at 346-347. The various clauses of subsection 4, providing for various reasons an exemption shall be rescinded, are set off by commas. See MCL 211.7cc(4) (". . . until December 31 of the year in which the property *is transferred or,* except as otherwise provided in subsections (5), (32), and (33), *is no longer a principal residence as defined in section 7dd,* or the owner is no longer entitled to an exemption as provided in subsection (3).") (emphasis added).

Finally, although this Court reviews the interpretation of a statute de novo, it will "generally defer to the Tax Tribunal's interpretation of a statute that it is charged with administering and enforcing." *Twentieth Century Fox*, 270 Mich App at 541 (quotation marks and citation omitted). The tribunal interpreted the December 31 language as applying to all of the exceptions set forth in subsection 4; thus, in this case, deference to the Tax Tribunal's

interpretation would bolster, rather than be in derogation of our construction of the statute. Because deference to the Tax Tribunal's interpretation of the statute would not assist respondent's position, we need not decide whether to give such deference in the case. Whether or not we give such deference, the interpretation would be the same—the no longer valid exemption remained in effect through December 31 of the 2017 tax year. Thus, petitioner is entitled to 100% of the principal residence exemption for that year.[3]

Affirmed.

/s/ Jonathan Tukel
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[3] Our decision here, of course, is based on our understanding of the public policy choices made by the legislature in the statutes at issue. See *Robinson v Detroit*, 462 Mich 439, 474; 613 NW2d 307 (2000) (Corrigan, J., concurring) ("[A] Court exceeds the limit of its constitutional authority when it substitutes its policy choice for that of the Legislature.").