*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH W. DEFORGE,

      Petitioner-Appellant,

v

ALLOUEZ TOWNSHIP,

      Respondent-Appellee.

FOR PUBLICATION
May 26, 2022
9:05 a.m.

No. 357568
Tax Tribunal
LC No. 20-004253-TT

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

SAWYER, J.

This dispute concerns the qualification of petitioner's property located in Keweenaw County for the Personal Residence Exemption (PRE) under the General Property Tax Act.[1] Petitioner had applied for and received the PRE in 2018, but respondent revoked it in 2020 on the basis that it determined the property to be a rental property. Specifically, respondent determined that over 50% of the property was used as an Airbnb, which respondent concluded disqualified the property from receiving the PRE. Petitioner appealed to the Michigan Tax Tribunal (MTT), which concluded that only 30% of property was used as an Airbnb and, therefore, petitioner was entitled to a 70% PRE.[2] Petitioner now appeals to this Court, arguing that the MTT erred in its analysis and that petitioner should receive a 100% PRE. We agree and reverse and remand the matter to the MTT for entry of judgment in favor of petitioner.

---

[1] MCL 211.7cc.

[2] Respondent argues that the MTT's calculations contain a mathematical error and that the correct percentage of use as an Airbnb under the MTT's analysis would be 35%. Given our conclusion in this case, we need not address that issue. Moreover, even if we agreed with the MTT's conclusion, respondent failed to cross-appeal and therefore any such error is not before us. *Kosymna v Botsford Community Hosp*, 238 Mich App 694, 696; 607 NW2d 134 (1999) (failure to file a cross-appeal generally precludes an appellee from raising an issue not raised by the appellant).

The subject property is located on Lake Superior. Petitioner resides in the home, and rents out three rooms during the summer months. The MTT based its determination of what portion of the house is used by petitioner as a primary residence and which portion is rented out during the summer. The MTT's calculations appear to be based upon the square footage devoted to the Airbnb rentals without adjustment for the portion of time that it is rented out.

The MTT based its determination solely on the basis of MCL 211.7cc(16), which provides as follows:

> Except as otherwise provided in subsection (30), if the principal residence is part of a unit in a multiple-unit dwelling or a dwelling unit in a multiple-purpose structure, an owner shall claim an exemption for only that portion of the total taxable value of the property used as the principal residence of that owner in a manner prescribed by the department of treasury. If a portion of a parcel for which the owner claims an exemption is used for a purpose other than as a principal residence, the owner shall claim an exemption for only that portion of the taxable value of the property used as the principal residence of that owner in a manner prescribed by the department of treasury.

The MTT's analysis was relatively brief:

> The subject property is a dwelling unit and by utilizing a portion of the dwelling as an Airbnb is considered to be a multi-purpose structure by this Tribunal. The portion advertised and utilized as an Airbnb is 30%. Petitioner's PRE is therefore 70%.

Given the narrow nature of the MTT's decision, we view this case as presenting purely a question of statutory construction. Specifically, whether utilizing a portion of a principal residence as an Airbnb disqualifies, even partially, the Principal Residence Exemption. As a question of statutory construction, we review the MTT's decision de novo.[3]

The MTT's opinion provides no analysis or citation to authority for the proposition that use of a portion of the residence for Airbnb turns the house into a "multiple-purpose structure" under the statute. We recognize the difficulty presented because the statute does not provide a definition of what is a "multiple-purpose structure." Petitioner does refer us to the instructions on the Michigan Department of Treasury's affidavit form (Form 2368) used in applying for the PRE. Specifically, it gives an example of a multiple-purpose structure as "a storefront with an upstairs flat." While this is hardly controlling, it does, in our opinion, provide a good example of a multiple-purpose structure. A storefront has little similarity to the residence area located above it.

Respondent presents little argument regarding the multi-purpose structure analysis other than referring to four examples contained in the Michigan Department of Treasury Principal

---

[3] *Rentschler v Melrose Twp*, 322 Mich App 113, 115 n 1; 910 NW2d 711 (2017).

Residence Exemption Guidelines. As noted in *Rentschler v Melrose Twp*,[4] the Guidelines do not have the force of law and, as was the case of the Guideline considered in *Rentschler*, are not necessarily legally accurate. While we do not find some of the examples given legally accurate or particularly relevant to this case, one of them, Guideline 142, illustrates the same point as the example in the affidavit form. That guideline uses the example of a property owner who operates an auto repair on the lower level of the building and lives in an apartment on the second floor. This example, does in fact, illustrate a case of a multi-purpose structure to which a 100% exemption is not applicable.

In the absence of a statutory definition of "multiple-purpose structure," we turn to the dictionary for guidance.[5] The Random House Webster's College Dictionary (2d ed) defines "multiple" as "consisting of, having, or involving several or many individuals, parts, elements, relations, etc." We simply do not see that allowing transient guests to stay in one's home is being a sufficiently distinct purpose to lead to the conclusion that the structure now has multiple purposes. Indeed, the dictionary's first definition of "purpose" is "the reason for which something exists or is done, made, etc." It seems to us that the purpose for which the structure exists, whether it be for the property owner or for the Airbnb guests, is to provide a place to sleep, rest, read a book, look out over the lake, etc. While there may be a pecuniary interest for the property owner, it is not sufficiently different than providing a room to a boarder who pays rent to deem it a separate purpose. And MCL 211.7dd(c) specifically allows for that if it is less than 50%.[6]

This brings us to the *Rentschler* case, upon which petitioner largely relies. *Rentschler* is not directly on point. But it is sufficiently similar that it directs us to the same result. In *Rentschler*, the property owner was denied a PRE because, although it was the owner's principal residence, the owner rented out the property for more than 14 days during the year.[7] This determination was based upon a Treasury Guideline that disallowed a PRE for property rented out for more than 14 days a year.[8] The Court concluded that this was contrary to the statute. Specifically, the Court

---

[4] 322 Mich App at 120.

[5] *Kinder Morgan Michigan, LLC v City of Jackson*, 277 Mich App 159, 163; 744 NW2d 184 (2007).

[6] Indeed, it is this "50% rule" that was the original basis for respondent revoking the PRE, which, of course, is not supported by the MTT's determination because the portion of the residence attributable to the Airbnb was determined to be 30%. Although the parties do spend some time discussing this rule, we decline to do so inasmuch as the MTT did not base its ruling on this provision of the statute. Indeed, the fact that it found that less than 50% of the property was dedicated to the Airbnb indicates that it implicitly rejected this argument. And, while appellee does discuss this rule, as previously noted, it has not appealed the MTT's decision.

[7] 322 Mich App at 116.

[8] The specific example used in the Guideline was for a residence located in a resort area occupied by the owner for a majority of the year, but was rented out during the summer months at which time the owner took an apartment in town. 322 Mich App at 120-121.

stated that "Renting one's home for more than 14 days does not disqualify a homeowner from the PRE."[9]  Not only does respondent fail to distinguish *Rentschler* from the case before us, it completely ignores the *Rentschler* decision.  But we can neither ignore nor distinguish it.  If completely renting out a principal residence for a portion of the year does not disqualify it from the PRE, we cannot conclude that renting out a portion of the property for a portion of the year would disqualify the owner from claiming the PRE.[10]

For these reasons, we conclude that, where a property otherwise qualifies for the Principal Residence Exception, the fact that a portion of the property is rented out for a portion of the year as an Airbnb or similar use, does not disqualify the property from a 100% PRE.  We reverse the MTT's decision to the contrary and remand the matter to the MTT for entry of judgment in favor of petitioner.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Petitioner may tax costs.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[9] 322 Mich App at 123-124.

[10] We acknowledge that there may be a limit to what portion of the year the property may be rented out and still be eligible for the PRE.  It is not clear from the *Rentschler* decision exactly how many days of the year that the property was rented out, other than it was for more than 14 days and that the property owner occupied the home for a majority of the tax years in question.  322 Mich App at 116.  In the case before us, the MTT's opinion reflects that only a portion of the home was rented out, generally on weekends and was available for rent for five months of the year.  In the absence of a concrete argument regarding the maximum number of days allowed and a specific finding that the number of days in the case exceeds that theoretical maximum, that question remains hypothetical, and we decline to address it.

-4-