*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CONSUMERS ENERGY COMPANY,

Plaintiff-Appellant,

UNPUBLISHED
August 18, 2022

v

BRIAN STORM and ERIN STORM,

Defendants-Appellees,

No. 350617
Kalamazoo Circuit Court
LC No. 2019-000160-CC

and

LAKE MICHIGAN CREDIT UNION,

Defendant.

ON REMAND

Before: O'BRIEN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

This takings case returns to this Court following remand from the Michigan Supreme Court. In our original opinion, we held that plaintiff, Consumers Energy Company, improperly appealed as of right the trial court's public-necessity determination, and that this Court was precluded by statute from otherwise considering the issue. See *Consumers Energy Co v Storm*, 334 Mich App 638, 649-501; 965 NW2d 672 (2020) (*Consumers I*), rev'd in part, vacated in part *Consumers Energy Co v Storm*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 162416) (*Consumers II*). Nevertheless, this Court addressed plaintiff's additional challenge to the trial court's grant of attorney fees to defendants, Brian Storm and Erin Storm, and held that, under the facts of this case, further proceedings were necessary to determine whether attorney fees were proper. See *id*. at 651-657. On appeal, the Supreme Court reversed this Court's first holding (explaining that plaintiff had an appeal as of right in this circumstance) and vacated this Court's holding with respect to attorney fees. *Consumers II*, ___ Mich at ___; slip op at 7. That Court explained that this Court "should have considered [plaintiff's] appeal as of right and reached the ultimate question of whether the trial court erred by holding that there was no public necessity for

-1-

the proposed acquisition," and that, because this question was not addressed, it was yet unclear whether defendants were entitled to reimbursement. *Id*.

Addressing plaintiff's arguments raised in its original appeal, we conclude that plaintiff had not identified any errors that the trial court made when it held that there was no public necessity for the proposed acquisition. For plaintiff's challenge to the trial court's award of attorney fees, we again conclude that the trial court's reasoning was improper under the facts of this case, and therefore vacate the award of attorney fees and remand for further proceedings.

## I. BACKGROUND

This case concerns defendants' interest in property they own in Kalamazoo, Michigan. Defendants bought the property in 2015. A powerline runs about 10 feet in front of defendants' property parallel to Broadway Avenue, a public street right of way that runs perpendicular to defendants' property. The powerline is accessible from Broadway Avenue. The powerline— known as the Lindbergh to Phillips 46kV Line, or the Lindbergh-Phillips line—was described by plaintiff's Vice President of Electric Grid Integration as follows:

> The Lindbergh to Phillips 46 kV Line is a high voltage distribution line, approximately 7.3 miles long, within Consumers Energy's integrated electric transmission and distribution system located in and providing electric service to Kalamazoo County and the City of Kalamazoo. The Lindbergh to Phillips Line delivers electricity at 46,000 Volts to Consumers Energy's Kendall and Oakwood Substations. An outage or failure of the Lindbergh to Phillips Line directly impacts over 8,220 electric customers.

Plaintiff already had access to the Lindbergh-Phillips line in the ten feet of property between the location of the line and defendant's property. Believing that this access space was insufficient to ensure the safe and reliable operation and maintenance of the Lindbergh-Phillips line, plaintiff filed a complaint on April 9, 2019, seeking to condemn a portion of defendants' interest in their property and grant plaintiff a perpetual easement to an area spanning 80 feet onto plaintiff's property.[1] Those 80 feet would be divided into three areas based on the distance from the powerline, and each area would have separate conditions placed on it: (1) within 20 feet of the line, the proposed easement would control and prohibit "the construction of buildings and structures"; (2) within 40 feet of the line, the easement would permit plaintiff to cut, trim, remove, or otherwise control "any or all trees and brush now or hereafter standing or growing"; and (3) within 80 feet of the line, the easement would permit plaintiff to cut, trim, remove, or otherwise control "danger trees in excess of 35 feet in height." The easement would also allow plaintiff to "have the right of unimpaired access" to that 80 feet for both vegetation management and to perform maintenance and construction on the Lindbergh-Phillips line, as necessary. A sketch depicting the proposed easement was attached to plaintiff's complaint. It showed that the proposed easement would cover all of defendants' front yard and stretched over defendants' side yards,

---

[1] Before filing the complaint, plaintiff submitted a good-faith offer to purchase the requested easement, but defendants rejected the offer.

almost reaching defendants' back yard. Defendants' house was almost completely covered by the easement.

Plaintiff alleged that the requested easement was "necessary in order to . . . manage vegetation that grows on the Property in proximity to the Lindbergh to Phillips 46 kV Line but which threatens the reliability and integrity of the Lindbergh to Phillips 46 kV Line." Plaintiff further alleged that the easement was "necessary in order to . . . permit [plaintiff's] construction and maintenance crews to work on the Lindbergh to Phillips 46 kV Line from a location outside of the property on which [the line] is located." Plaintiff ended its complaint by stating that if defendants did not timely challenge the "necessity of the easement and right of entry for the vegetation management and construction and maintenance rights sought in this case," as required under MCL 213.56(1), then the necessity "will be conclusively presumed to exist" and the easement must be granted.

On May 24, 2019, defendants filed an answer to plaintiff's complaint, alleging in relevant part that plaintiff had failed to demonstrate a necessity for the easement because the Lindbergh-Phillip line had existed for many years without incident, showing that plaintiff's current easement was sufficient to maintain the powerline. Defendants also contended that they had no trees or other vegetation on their property that posed a threat to the powerline, and that plaintiff never requested defendants' permission to enter their property for any reason, showing that the easement was not necessary to achieve plaintiff's stated purpose.

Along with its answer, defendants moved for the trial court to "determine the necessity of plaintiff Consumer Energy Company's taking of their land." In their brief accompanying the motion, defendants contended that not only did they have no trees on their property within the bounds of the proposed easement, but there were actually two trees near the Lindbergh-Phillip line—not on defendants' property—that were within the easement that plaintiff already had. Defendants argued that plaintiff could not establish that its proposed easement was reasonably necessary to achieve the easement's stated purpose of accessing the powerlines and managing vegetation because (1) plaintiff could access the powerline from the public right of way, had done so for years, and had never had a problem doing so, and (2) there was no vegetation on defendants' property that threatened the powerline, and any concern about vegetation on defendants' property threatening the powerline at some point in the future was too remote to make the easement a reasonable necessity at the present time.

Plaintiff filed a response to defendants' motion on June 21, 2019. Plaintiff explained that when the line was originally built in 1969, it did not acquire any easement rights on defendants' property, but "[i]t now needs to acquire those rights. The permanent easement sought here is necessary for the purpose of controlling vegetation along the 7.3 mile route of the Lindbergh to Phillips 46 kV line, for the length of its operational lifetime, and to provide safe access to the line at all points along its route by Plaintiff's workers for purposes of inspection, repairs and maintenance." Plaintiff further explained that its requested easement—which it referred to as the "20/40/80 standard"—was the standard easement in the industry and was developed to ensure that powerlines could safely and reliably deliver power to customers. Plaintiff contended that it needed its requested easement to "extend[] *everywhere* along the entire length of the Lindbergh to Phillips line where [it does] not now exist," "even if the first actual use [of the easement] is not within the reasonably immediate future," because it needed to be able to respond to unpredictable events like

-3-

storms knocking over a powerline. Plaintiff also stated that the "actual use [of the easement] in the future is indefinite only in relation to this parcel, not the entire length of the line which [such easements] are intended to protect." Plaintiff concluded that, in light of the facts that (1) the easement was necessary to respond to "the vagaries of nature and chance," (2) "[t]hese rights are actually needed, in fact, along the 7.3 miles of the Lindbergh to Phillips line," and (3) the requested easement was the industry standard and met all government standards, plaintiff's easement on defendants' property was a necessity.

On June 28, 2019, the trial court held an evidentiary hearing to determine the necessity of plaintiff's proposed easement. Brian testified that there were no trees in the front of his property or in the side yard of his property, meaning that there were no trees in any of the property that plaintiff was requesting an easement on. There were, however, two trees in the public right of way in front of the property. According to Brian, those trees, as well as the Lindbergh-Phillip line next to the trees, had been there since he bought the property in 2015. Brian testified that plaintiff had approached him "[p]eriodically over the last 3 years" because there had been talk about replacing the Lindbergh-Phillip line. He believed that "the project was put on hold, almost died down, and then within the last 6 to 8-months or so it's picked back up," leading to plaintiff's requesting the easement. According to Brian, plaintiff's only explanation for why it needed the requested easement when the property had no trees in the easement area was, "[T]his is the standard easement." Brian testified that plaintiff did not need to come on defendants' property to access the Lindbergh-Phillip line because the line sat about 10 feet off the property. Brian also testified that plaintiff had never asked to come onto the property to access the line.

Jack Vander Maas, plaintiff's senior system forester for high-voltage distribution, testified that even though there were no trees on defendants' property now, "[w]hat's important about this easement is it's a long term document and it stays with the property until our structures are no longer there, and that—that's what helps us protect and be able to maintain and do the work that is needed to be done on our properties." He explained that "[o]ne year there's a lawn there and the next year you have trees planted underneath the line." Vander Maas further explained that "we like uniformity" of rights along a powerline line like the Lindbergh-Phillip line "so that we know when we're working on a line we're not going to be trespassing in a sense on someone's property." He said uniform rights to all property along a powerline was more efficient. Vander Maas opined that the current roughly 10 feet of land between the powerline and defendants' property was sufficient to barely fit one of plaintiff's trucks, but was not sufficient to allow plaintiff to park the truck as needed to trim trees near the line. He later explained that trucks generally need to be more perpendicular to a powerline to operate effectively, and the trucks are about 30 feet long. When defendants' counsel suggested that an alternative approach plaintiff could take to requesting an easement on defendants' property would be to wait and see if defendants ever planted a tree that could someday threaten the line, Vander Maas said, "That would be—that would be very inefficient." Vander Maas further explained, "What we do is we—we don't—we cannot manage tree by tree. So, when we work a line, we work the whole line and all—the trees on that line." When counsel for both parties finished asking questions, the trial court asked Vander Maas what plaintiff would do now if it needed to access defendants' property, and Vander Maas replied that his crew members would ask the property owner to access the property, and "they'll let us do the work."

Peter Mulhearn, the principal engineer lead for plaintiff's high-voltage-science-standard section, testified that he was involved with plans to rebuild the Lindbergh-Phillip line. He explained that the new poles to be installed on the line would be 85 to 90-feet tall, and that plaintiff required access rights in excess of 40-feet to install the poles because, at that height, "[c]ranes are required in addition" to the equipment and trucks used to install shorter poles. Mulhearn further explained that a taller-than-normal crane was required to place poles of that height in the ground. Mulhearn also calculated that the no-build area within the 20 feet of the line was necessary due to the amount that a sagging line can swing. According to Mulhearn, due to characteristics of the 46,000-volt line and the materials used to accommodate the varying conditions in Michigan such as ice and heat, wind could blow the lines up to 15 feet. Mulhearn explained that plaintiff added a 3-foot "buffer" to that, and so, to "assure the safety" of those near the lines, plaintiff assumes that the line can sway "just past 18-feet."

After listening to the parties' arguments, the trial court ruled that plaintiff had failed to establish the public necessity of acquiring an easement on defendants' property, and thus ruled in favor of defendants.

On August 1, 2019, defendants moved for entry of judgment and requested attorney fees. Defendants contended that they were entitled to attorney fees under MCL 213.66(2) for successfully challenging the necessity of plaintiff's proposed acquisition.

In response, plaintiff argued that attorney fees were not appropriate under MCL 213.66(2) because the trial court made no finding that the proposed acquisition was "improper," as required to award fees under the statute. Plaintiff contended that, by its plain terms, the statute required both (1) a successful challenge to a proposed acquisition and (2) a finding that the proposed acquisition was improper. According to plaintiff, a successful challenge to a proposed acquisition could not automatically mean the proposed acquisition was improper under the statute because such an interpretation would render terms of the statute meaningless.

In reply, defendants argued that a successful challenge to a proposed acquisition was necessarily a finding that the proposed acquisition was improper, and therefore they were entitled to attorney fees under the statute.

The trial court held a hearing on plaintiff's motion, and, after listening to the parties' argument, issued a ruling on the record. The court first noted that it had held a hearing to determine the public necessity of plaintiff's proposed acquisition, and that "the plaintiffs [sic] had failed" to prove that "there was a necessity to condemn property in order to protect[]" the Lindbergh-Phillip line. The court then noted that plaintiff "engaged in proper procedural actions" when it attempted to condemn defendants' property, but concluded that "it is clear that the assertion of condemnation of this particular property was improper, and therefore subject to triggering the attorney fee provision of the statute." The trial court explained that "trying to condemn property, which is not needed for the necessity, as filed by the plaintiff, goes beyond what should be allowed," and is thus improper. The court surmised, "So, bottom line is that the attempt to condemn property not needed for this necessity is improper, and therefore it does trigger the imposition of attorney fees."

On August 26, 2019, the trial court entered an order awarding defendants' requested attorney fees and dismissing the case. This appeal followed.

## II. PUBLIC-NECESSITY DETERMINATION

On appeal, plaintiff is not contesting the trial court's factual finding as to public necessity, and is only challenging "the trial court's incorrect legal conclusions and its failure to correctly interpret and apply" the Uniform Condemnation Procedure Act (UCPA), MCL 213.51a *et seq.*[2] A challenge to the proper interpretation of the UCPA, as well as the application of a trial court's findings of fact to the UCPA, are questions of law reviewed de novo. *Bd of Co Rd Commissioners for Co of Washtenaw v Shankle*, 327 Mich App 407, 412; 934 NW2d 279 (2019).

Plaintiff, as an electric company formed under MCL 486.251, has authority to condemn lands "which may be necessary to generate, transmit, and transform electric energy for public use in, upon, or across private property," MCL 486.252. Plaintiff sought to acquire property rights to a portion of defendants' property under MCL 486.252, but defendants did not believe that the acquisition was necessary. Defendants therefore challenged the acquisition under MCL 213.56(1), which states that "an owner of the property desiring to challenge the necessity of acquisition of all or part of the property for the purposes stated in the complaint may file a motion in the pending action asking that the necessity be reviewed."

As plaintiff is a private agency, the case proceeded under MCL 213.56(3), which states in relevant part, "Except as otherwise provided in this section, with respect to an acquisition by a private agency, the court at the hearing shall determine the public necessity of the acquisition of the particular parcel." Thus, the trial court was to review the necessity of plaintiff's proposed acquisition of defendants' property for the purposes stated in plaintiff's complaint. See *Twp of Grosse Ile v Grosse Ile Bridge Co*, 477 Mich 890, 891 (2006).

Plaintiff stated in the complaint that its purpose in acquiring rights to defendants' property was to ensure the safe and reliable operation and maintenance of the Lindbergh-Phillip line. It stated that, to accomplish this purpose, it was requesting an easement to (1) maintain the vegetation on defendants' property within a certain distance of the line and (2) enter defendants' property as necessary to perform maintenance and construction on the line. The complaint stated in pertinent part:

18. Consumers Energy has, therefore, determined that it is necessary in order to properly maintain the Lindbergh to Phillips 46 kV Line and improve the reliability of that line to acquire rights in the form of an easement interest in the Property described in this Complaint to manage vegetation that grows on the Property in proximity to the Lindbergh to Phillips 46 kV Line but which threatens the reliability and integrity of the Lindbergh to Phillips 46 kV Line. Likewise, Consumers Energy has determined that it is necessary in order to properly maintain the Lindbergh to Phillips 46 kV Line to acquire rights in the form of an easement

---

[2] While some of plaintiff's arguments on appeal seemingly take issue with the trial court's factual findings, we do not construe those arguments as challenging the trial court's findings of fact in light of plaintiff's insistence in its reply brief that this appeal is subject to de novo review (and not clear error) because it is only contesting "the trial court's incorrect legal conclusions and its failure to correctly interpret and apply the UCPA . . . ."

interest in the Property described in this Complaint to permit its construction and maintenance crews to work on the Lindbergh to Phillips 46 kV Line from a location outside of the property on which it is located.

The trial court was not permitted to review the purposes stated in the complaint, but was permitted to review "the necessity of acquiring the property for the purposes stated in the complaint." *Id*. at 890-891. That is what the trial court did. The trial court first noted that the line had been in front of defendants' property for at least 50 years, and during that time, an easement had never been acquired or otherwise been deemed necessary for maintenance of the line. It then noted that the property did not have a history of vegetation affecting the line or necessitating repairs. It then determined that, on the basis of these facts, plaintiff's acquisition of an easement to defendants' property was not necessary to ensure the safe and reliable operation and maintenance of the Lindbergh-Phillip line. That is, the trial court determined that plaintiff's acquiring an easement to defendants' "particular property," MCL 213.56(3), was not necessary "for the purposes stated in the complaint," MCL 213.56(1). The trial court did not review plaintiff's decision to acquire the easement, and it properly limited its review to "the necessity of acquiring the property for the purposes stated in the complaint." *Id*.

Plaintiff argues that the trial court measured "public necessity" under an "absolute need" standard, when plaintiff only had to establish that the acquisition was reasonably necessary. We disagree that the trial court applied an "absolute need" standard. While plaintiff is correct that the trial court stated that plaintiff did not show an "absolute need" for easement rights to defendants' property, nothing about the trial court's decision suggests that it actually applied an "absolute need" standard. Instead, the trial court focused on the evidence surrounding whether an easement was necessary on defendants' "particular parcel" as required under MCL 213.56(3), and concluded that, based on the evidence presented, it was not. Thus, despite the trial court's apparent off-the-cuff reference to "absolute need," it did not apply wrong legal principles to its review of the public necessity of plaintiff's proposed acquisition of the property.

Plaintiff next contends that the trial court conducted a "balancing test" to determine public necessity, wherein it weighed defendants' rights to quiet enjoyment of their land against the public necessity of plaintiff's taking. In support of this contention, plaintiff cites a portion of the trial court's ruling wherein the court references the need to balance the competing interests at play in a takings case. But in that portion of its opinion, the trial court was not employing a balancing test as part of its reasoning, and was instead referring to an argument made by defendants:

> It wasn't necessarily argued in these terms, but I think that what, that certainly the defendants are arguing, is that there is clearly case law, which establishes that the court has to balance beyond the constitutional right of—of the owner to have quite [sic] enjoyment of his property without interference from the government. Balance that interest against the public interest of having, in this case, reasonably secure access to electrical power, which is really the, I guess, the ignition, for lack of a better term, of the plaintiff.

Thus, plaintiff is incorrect that the trial court employed a balancing test in this case.

For the foregoing reasons, we conclude that plaintiff's argument that "[t]he trial court failed to properly interpret and apply the UCPA" in this case is without merit.[3]

## III. ATTORNEY FEES

Next, plaintiff challenges the trial court's interpretation and application of the UCPA in awarding attorney fees and costs to defendants. While attorney fees are generally reviewed for an abuse of discretion, whether the trial court properly interpreted and applied the UCPA to an award of attorney fees is reviewed de novo. *Indiana Michigan Power Co v Cmty Mills Inc*, 333 Mich App 313, 318; 963 NW2d 648 (2020).

Having concluded that the trial court's public-necessity determination was not improper, this case now stands in the same posture it stood when this Court addressed the attorney-fees issue in the previous opinion. There, this Court agreed with plaintiff that the trial court incorrectly interpreted and applied the UCPA's attorney-fee provision, explaining as follows:

> After successfully challenging plaintiff's proposed acquisition of their property, defendants sought—and the trial court awarded defendants—attorney fees under MCL 213.66(2), which states:
>
> > If the property owner, by motion to review necessity or otherwise, successfully challenges the agency's right to acquire the property, or the legal sufficiency of the proceedings, and the court finds the proposed acquisition improper, the court shall order the agency to reimburse the owner for actual reasonable attorney fees and other expenses incurred in defending against the improper acquisition.
>
> In *Escanaba & Lake Superior R Co v Keweenaw Land Ass'n, Ltd*, 156 Mich App 804, 812; 402 NW2d 505 (1986), this Court acknowledged that a property owner

---

[3] In its reply brief, plaintiff raises several new arguments related to the trial court's ruling on public necessity that it did not raise in its initial brief. We decline to address these new arguments because they were not properly raised. See *Kinder Morgan Michigan, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007) (declining to address issues first raised in a reply brief because "[r]eply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief"). These arguments include that the trial court impermissibly reviewed plaintiff's purposes for the taking, that plaintiff's stated purpose for the taking was to have uniform rights along the Lindbergh-Phillip line, and that the trial court incorrectly placed the burden of proof under the UCPA on plaintiff.

We also note that all of these new arguments raised for the first time in plaintiff's reply brief were arguments that an amicus curiae attempted to raise in an amicus brief. The motion to file the amicus curiae brief was denied, however, and the brief was not accepted for filing. *Consumers Energy Company v Storm*, unpublished order of the Court of appeals, entered July 28, 2020 (Docket No. 350617).

requesting attorney fees under MCL 213.66(2) must satisfy two prongs: (1) the property owner must successfully challenge the agency's right to acquire the property or the legal sufficiency of the proceedings, and (2) the court must find the proposed acquisition improper.

In *Escanaba*, the property-owner defendants successfully challenged the legal sufficiency of the proceedings—satisfying the first prong of MCL 213.66(2)—but the trial court did not explicitly find that the proposed acquisition was improper. *Id*. at 807. On appeal, the plaintiff argued that absent such a finding by the trial court, the second prong necessary to recover attorney fees under MCL 213.66(2) was not satisfied. *Id*. at 812. This Court disagreed, holding "that a finding that the condemnation proceedings are procedurally defective is per se a finding that the proposed acquisition is improper, and that the trial court does not have to separately state on the record that it finds the acquisition 'improper.' " *Id*. at 812-813.

There is no question that defendants successfully challenged plaintiff's acquisition in this case, thereby satisfying the first prong of MCL 213.66(2). The dispute on appeal is whether the second prong was satisfied. *Escanaba* is not applicable because its holding was limited to instances in which the property owner prevails based on the legal insufficiency of the proceedings; it says nothing about cases like this one where the property owner successfully challenges the agency's right to acquire the property.

Nonetheless, the trial court concluded that, similar to this Court's ruling in *Escanaba*, a trial court's ruling in favor of a property owner challenging an agency's right to acquire the property is necessarily a finding by the court that the proposed acquisition was improper. We disagree and conclude that, in this case, the trial court's ruling against plaintiff on defendants' challenge to the necessity of plaintiff's proposed acquisition was not a per se finding that the proposed acquisition was improper.

When interpreting a statute, courts "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (quotation marks and citation omitted). If every property owner's successful challenge to the legal sufficiency of condemnation proceedings is per se a finding by the court that the acquisition was improper (as this Court held in *Escanaba*) , *and* every property owner's successful challenge to the agency's right to acquire the property is a per se finding by the court that the acquisition was improper (as defendants argue and the trial court held), then MCL 213.66(2)'s requirement that "the court finds the proposed acquisition improper" is rendered completely nugatory. If such an interpretation were the Legislature's intent, then it would have simply left out MCL 213.66(2)'s requirement that "the court finds the proposed acquisition improper."

The circumstances of this case illustrate why granting a property owner's challenge to an acquisition is not a per se finding that the proposed acquisition was improper. At the hearing to determine the public necessity of the acquisition, the trial court placed the burden of proving the necessity of the acquisition on plaintiff, stating that it did "not believe that plaintiff has established a basis on which a taking of this particular property for the easements that are being proposed has established a necessity." At the hearing on defendants' request for attorney fees, the court reiterated that, at the necessity hearing, plaintiff had the burden of proving that its proposed acquisition was necessary, stating that "plaintiff had failed" to demonstrate that "there was a necessity to condemn" defendants' property. Because the trial court placed the burden of proving the public necessity of the acquisition on plaintiff, its ruling in defendants' favor was a finding that plaintiff failed to carry its burden. That is, the trial court's ruling was not akin to a finding that *defendants proved* that plaintiff's proposed acquisition was not necessary, and thus the ruling could not be a per se finding that the acquisition was improper. The trial court's ruling in defendants' favor was a finding that plaintiff failed to carry its burden, nothing more.

This highlights the fundamental flaw in defendants' argument. Defendants contend that by successfully challenging plaintiff's attempted acquisition, "the trial court found that there was no necessity for the condemnation." As explained, this is inaccurate; what the trial court found was that plaintiff failed to establish that its acquisition of defendants' property was necessary. That finding is distinct from a finding that the acquisition was improper.

This is not to say that *Escanaba* was wrongly decided. To the contrary, *Escanaba*'s holding comports with our reasoning. In *Escanaba*, the defendants moved for summary disposition challenging the legal sufficiency of the proceedings on grounds that the plaintiff failed to make a good-faith offer to purchase the property as required by the UCPA. *Escanaba*, 156 Mich App at 809. In granting the motion, the trial court held that there was no question of fact that the plaintiff failed to make a good-faith offer to purchase the property, so the proceedings were legally insufficient, and the defendants were entitled to judgment as a matter of law. *Id*. Thus, the trial court in *Escanaba* held that the defendants established that the proceedings were legally insufficient, thereby affirmatively establishing that the proposed acquisition was improper. Here, in contrast, defendants did not establish that acquisition of their property was *not* a necessity; rather, plaintiff failed to carry its burden of establishing the necessity of its proposed acquisition.

Defendants argue that our interpretation is "entirely inconsistent with the purpose for fee-shifting in the first place." This Court recently reiterated that "[t]he rationale behind MCL 213.66(2) is that property owners may not be forced to suffer because of an action that they did not initiate and that endangered, through condemnation proceedings, their right to private property." *Indiana Michigan Power*, [333] Mich App at [319] (quotation marks and citation omitted). And in *Escanaba,* this Court stated that "[t]he legislative intent behind the [UCPA] is to

-10-

place the owner of the property in as good a position as was occupied before the taking." *Escanaba*, 156 Mich App at 815. Thus, defendants are correct to the extent that not awarding them attorney fees seems to run contrary to the purpose behind the statute. Yet MCL 213.66(2) clearly requires that "the court find[] the proposed acquisition improper" before awarding attorney fees. So, while our interpretation of MCL 213.66(2) may be "inconsistent with the purpose of the fee-shifting" statute as defendants suggest, it is nonetheless consistent with the plain statutory language. The plain language of a statute is not trumped by "the perceived purpose of the statute." *Perkovic*, 500 Mich at 53 ("The Court of Appeals' reliance on the perceived purpose of the statute runs counter to the rule of statutory construction directing us to discern legislative intent from plain statutory language.") [But see *Griffin v Trumbull Insurance Company*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162419) slip op at 11-13 (holding that an act's general purpose can trump the unambiguous text of a statute in some instances)]. [*Consumers I*, 334 Mich App at 651-657 (footnote omitted).]

Because the Michigan Supreme Court only vacated this portion of the opinion because it was premature in light of the Court's holding that plaintiff could appeal as of right, see *Consumers II*, ___ Mich at ___; slip op at 7, we adopt this Court's previous reasoning. Accordingly, the trial court erred as a matter of law when it concluded that its ruling against plaintiff on defendants' challenge to the necessity of plaintiff's proposed acquisition was a per se finding that the proposed acquisition was improper. We therefore vacate that portion of the trial court's order and remand for the trial court to again determine whether the proposed acquisition was improper under MCL 213.56(6) such that defendants are entitled to attorney fees.

## IV. CONCLUSION

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron

-11-