*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANKLIN WARREN,

        Plaintiff-Appellant,

v

MCLAREN FLINT,

        Defendant-Appellee.

FOR PUBLICATION
July 25, 2024
9:00 a.m.

No. 366226
Genesee Circuit Court
LC No. 22-117709-NH

Before: JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

REDFORD, J.

Plaintiff, Franklin Warren, appeals as of right an order granting defendant, McLaren Flint, summary disposition under MCR 2.116(C)(7) (immunity) and MCR 2.116(C)(8) (failure to state a claim). Having determined that defendant was entitled to immunity from this action under MCL 691.1475, that MCL 691.1475 is not void for vagueness, and that plaintiff failed to plead facts sufficient to entitle him to further discovery, we affirm.

## I. BACKGROUND FACTS AND PROCEDURAL POSTURE

This case involves a claim of medical malpractice for medical care plaintiff received from defendant's hospital during the early days of the coronavirus ("COVID-19") pandemic. On March 10, 2020, in response to the outbreak of COVID-19, Governor Whitmer issued Executive Order No. 2020-4, declaring a state of emergency.[1] Plaintiff alleges that on March 31, 2020, he went to defendant's hospital seeking treatment for shortness of breath. He was admitted to the COVID-

---

[1] Although neither party discusses the executive orders Governor Whitmer issued in response to the COVID-19 pandemic, this Court may take judicial notice of undisputed facts within public record. *Precise MRI of Mich, LLC v State Auto Ins Co*, 340 Mich App 269, 281 n 5; 985 NW2d 892 (2022).

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

19 floor and was intubated. He received a COVID-19 test the same day, which later tested positive. The lower court records do not indicate what day he received the results from the test.

On April 1, 2020, plaintiff had a consultation for acute respiratory failure and acute kidney injury. For the first time on April 6, 2020, nursing notes indicated that plaintiff had a pressure ulcer[2] on his coccyx. Foam padding was placed on the wound. Plaintiff remained at defendant's hospital through May 26, 2020. He alleged that during that time he developed additional pressure ulcers and minimal nursing intervention occurred to treat and prevent the formation of those pressure ulcers. On May 26, 2020, plaintiff was transferred to Veterans Affairs Ann Arbor Healthcare System for treatment for respiratory failure and a large sacral decubitus ulcer that developed during his stay at defendant's hospital. He was eventually discharged on July 24, 2020.

Plaintiff thereafter filed this action against defendant, alleging two counts of negligence: one involving defendant's nursing staff and the other involving defendant itself. Under the first count, plaintiff alleged that defendant's staff treated plaintiff's pressure ulcers negligently and below the standard of care for medical professionals. He pleaded a list of actions defendant's staff allegedly failed to do when treating plaintiff, including failing to correctly assess plaintiff's risk factors for developing pressure ulcers, repositioning plaintiff to prevent development of wounds, providing appropriate treatment, and other failures to act. He alleged that by failing to take the listed actions, the nursing staff "commit[ed] one or more negligent acts and/or grossly negligent acts and/or omissions, and breached the applicable standard of care . . . ." For the second count, plaintiff pleaded a list of acts defendant allegedly failed to do in training and supervising the nursing staff and similarly pleaded that the failure to take these acts was negligent or grossly negligent.

Plaintiff attached an affidavit of merit from Kara A. Johnson, RN to his complaint. The affidavit contained the same lists of allegations regarding defendant and defendant's nursing staff verbatim from plaintiff's complaint. Johnson affirmed that the lists of actions defendant and defendant staff failed to perform were the proper standard of care and that the failure to comply with the list was negligent. The affidavit contained no mention of gross negligence.

During discovery, plaintiff disclosed to defendant that his legal theories were "based on MCL 600.2922, MCL 600.2912, and MCL 600.5838." MCL 600.2922 involves wrongful-death actions, and is inapplicable to the present case. However, MCL 600.2912 and MCL 600.5838, which concern medical malpractice, were applicable to plaintiff's pleadings.

After discovery, defendant moved for summary disposition under MCR 2.116(C)(7), asserting that it had immunity from plaintiff's negligence claims under MCL 691.1475. Defendant argued that MCL 691.1475 applied because it was a "health care facility" and plaintiff's allegations involves "health care services" provided in support of the state's response to the COVID-19 pandemic. Defendant also moved for summary disposition under MCR 2.116(C)(8), asserting that

---

[2] Pressure ulcers, also known as bedsores, are "injuries to the skin and the tissue below the skin that are due to pressure on the skin for a long time." Mayo Clinic, *Bedsores (Pressure Ulcers)* <https://www.mayoclinic.org/diseases-conditions/bed-sores/symptoms-causes/syc-20355893> (accessed June 14, 2024).

-2-

because MCL 691.1475 applied, the only way that plaintiff's claims were not barred on immunity grounds was if they involved willful misconduct, negligence, intentional and willful criminal misconduct, or intentional infliction of harm. Defendant asserted that plaintiff only raised the possibility of gross negligence in his pleading, but failed to plead any facts in support of that theory.

In response, plaintiff contended that he brought "a professional negligence action alleging that [d]efendant's nursing staff deviated from the standard of care for nurses in caring for [p]laintiff during the above referenced time." Addressing MCL 691.1475, plaintiff asserted that there was no indication that the care provided was in support of the state's response to the COVID-19 pandemic; rather, plaintiff asserted that the care provided was in the course of defendant's ordinary business as a private hospital. Plaintiff contended that this was not care "provided to support a state vaccine mandate or support any other state mandate or policy." Plaintiff asserted that the statute only applied to COVID-19-related treatment as evidenced by the statutory language "by reason of those services," which plaintiff asserted meant COVID-19 pandemic services. Plaintiff did not dispute that he contracted COVID-19, but he asserted that wound care had nothing to do with COVID-19 care.

Addressing defendant's assertion that plaintiff failed to plead any facts supporting a theory of gross negligence, plaintiff claimed that further discovery was needed to clarify his gross-negligence theory. When asked by the trial court to provide an example of gross negligence involving pressure ulcers, plaintiff's counsel gave a nonresponsive answer: a patient treated at the hospital for a gunshot wound would have nothing to do with COVID-19 treatment but could be interpreted to be covered under the statute. Alternatively, plaintiff asserted that MCL 691.1475 was unconstitutionally vague because the statutory phrase "services in support of this state's response to the COVID-19 pandemic" was subject to multiple interpretations.

The trial court granted defendant's motion for summary disposition. The trial court ruled that the immunity provided by MCL 691.1475 applied to plaintiff's claims. The trial court explained that "it is hard to imagine a more classic progression of events that is related to COVID. He comes in because he can't breathe. He takes a test right away. He gets . . . respiratory support to help him come through COVID." The trial court further explained that during the time that plaintiff was hospitalized for COVID-19, he developed the pressure ulcers. The trial court also rejected plaintiff's additional discovery request as a fishing expedition. The trial court explained that plaintiff provided no facts and pleaded no theory in support of gross negligence. Finally, the trial court determined that MCL 691.1475 was not vague as applied to plaintiff's set of circumstances.

This appeal followed.

## II. STANDARD OF REVIEW

We review "de novo constitutional issues, whether a statute is unconstitutionally vague, and questions of statutory interpretation, construction, and application." *In re TEM*, 343 Mich App 171, 179-180; 996 NW2d 850 (2022). Likewise, we review de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted under MCR 2.116(C)(7) when "[e]ntry of judgment,

dismissal of the action, or other relief is appropriate because of . . . immunity granted by law . . . ." As we have previously discussed:

> The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence, the substance of which would be admissible at trial. The contents of the complaint are accepted as true unless contradicted by the evidence provided. [*Latits v Phillips*, 298 Mich App 109, 113; 826 NW2d 190 (2012) (quotation marks and citation omitted).]

Defendant also motioned for summary disposition under MCR 2.116(C)(8). A motion is properly granted under MCR 2.116(C)(8) when the opposing party fails to state a claim upon which relief can be granted. Such a motion "tests the legal sufficiency of the claim on the basis of the pleadings alone . . . ." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). When reviewing the motion, the trial court "must accept as true all factual allegations contained in the complaint." *Id*. The trial court must grant summary disposition "if no factual development could justify the plaintiff's claim for relief." *Id*. (quotation marks and citation omitted).

## III. EXECUTIVE & LEGISLATIVE RESPONSES TO COVID-19 PANDEMIC RELEVANT TO THIS CASE

Before addressing the merits of plaintiff's appeal, we contextualize the enactment of MCL 691.1475. The global outbreak of the COVID-19 pandemic was "one of the most threatening public-health crises of modern times." *In re Certified Questions from the United States Dist Court, Western Dist of Mich, Southern Div*, 506 Mich 332, 337; 958 NW2d 1 (2020). As previously noted, Governor Whitmer declared a state of emergency within Michigan on March 10, 2020. EO 2020-4. Following declaration of the state of emergency, Governor Whitmer issued various executive orders in response to the burgeoning health crisis, many of which were directed at healthcare providers. For example, on March 20, 2020, Governor Whitmer issued temporary restrictions on nonessential medical and dental procedures. Executive Order No. 2020-17.

Relevant to the issues on appeal, Governor Whitmer issued Executive Order No. 2020-30, which temporarily suspended Article 15 of the Public Health Code, MCL 333.16101 *et seq*. to facilitate healthcare facilities' response to the COVID-19 pandemic. Among its temporary suspensions of licensing requirements and medical protocol, EO 2020-30 provided:

> Consistent with MCL 30.411(4), any licensed health care professional or designated health care facility that provides medical services in support of this state's response to the COVID-19 pandemic is not liable for an injury sustained by a person by reason of those services, regardless of how or under what circumstances or by what cause those injuries are sustained, unless it is established that such injury or death was caused by the gross negligence, as defined in MCL 30.411(9), of such health care professional or designated health care facility.

The purpose of this executive order was as follows:

> Responding effectively to the urgent and steep demands created by the COVID-19 pandemic will require the help of as many health care professionals as

-4-

possible, working in whatever capacities are appropriate to their respective education, training, and experience. To ensure health care professionals and facilities are fully enabled to provide the critical assistance and care needed by this state and its residents during this unprecedented emergency, it is reasonable and necessary to provide limited and temporary relief from certain restrictions and requirements governing the provision of medical services. [EO 2020-30.]

On April 27, 2020, EO 2020-30 was rescinded by Executive Order No. 2020-61; however, EO 2020-61 contained the same liability immunity provision as EO 2020-30. EO 2020-61 further contextualized the development of the COVID-19 pandemic:

> In the three weeks that followed, the virus spread across Michigan, bringing deaths in the hundreds, confirmed cases in the thousands, and deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions. On April 1, 2020, in response to the widespread and severe health, economic, and social harms posed by the COVID-19 pandemic, I issued Executive Order 2020-33. This order expanded on Executive Order 2020-4 and declared both a state of emergency and a state of disaster across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, and the Emergency Powers of the Governor Act of 1945.

On July 15, 2020, Governor Whitmer issued Executive Order No. 2020-150, which rescinded EO 2020-61 in recognition that the pressure on hospitals eased and the necessity of the broad relief provided in EOs 2020-30 and 2020-61 waned.

Following the issuance of these executive orders, the Legislature enacted the Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471 *et seq*. Our Legislature passed the PHCIA with an effective date of October 22, 2020. 2020 PA 240. Mirroring the language of the immunity provision in EO 2020-30, MCL 691.1475 provides:

> A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility.

This liability immunity provision applies retroactively to all claims "on or after March 29, 2020 and before July 14, 2020." MCL 691.1477.

IV. IMMUNITY UNDER MCL 691.1475

Plaintiff argues that the trial court erred by granting summary disposition to defendant on immunity grounds because his negligence claims were not barred by MCL 691.1475. We disagree.

Well-established rules of statutory construction guide our analysis:

The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In construing a statute, this Court should give every word meaning, and should seek to avoid any construction that renders any part of a statute surplus or ineffectual. It is well established that to discern the Legislature's intent, statutory provisions are not to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole. [*In re Casey Estate*, 306 Mich App 252, 256-257; 856 NW2d 556 (2014) (quotation marks and citation omitted).]

We "give undefined statutory terms their plain and ordinary meanings." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). "If a statute is ambiguous, construction is permitted, and the rules of statutory construction 'merely serve as guides' toward the ultimate goal of discerning the intent of the Legislature." *East Lansing v Thompson*, 291 Mich App 34, 36-37; 804 NW2d 567 (2010) (citation omitted). A statute is ambiguous when it irreconcilably conflicts with another statute or "when it is *equally* susceptible to more than a single meaning." *Id.* (quotation marks and citation omitted). "A legislative analysis is a generally unpersuasive tool of statutory construction." *Twentieth Century Fox Home Entertainment, Inc v Dep't of Treasury*, 270 Mich App 539, 546; 716 NW2d 598 (2006) (quotation marks and citation omitted). Regardless, "[c]ourts may look to the legislative history of an act, as well as to the history of the time during which the act was passed, to ascertain the reason for the act and the meaning of its provisions." *Id.* (quotation marks and citation omitted; alteration in original).

For resolution of the issues raised in this appeal, we must consider and apply MCL 691.1475 as set forth above. There is no dispute that the act or omission that is the basis of plaintiff's medical malpractice action occurred during the statutory time frame. See MCL 691.1477.

Plaintiff contends that the statutory language "provides health care services in support of this state's response to the COVID-19 pandemic . . . by reason of those services . . ." in MCL 691.1475 means that the challenged care must have been provided specifically to support the state's response to the pandemic and not care provided in the ordinary course of business. He contends that the wound care he received was provided by defendant in the ordinary course of business as a private hospital and not in support of a state vaccine mandate[3] or other state mandate or policy. We disagree with plaintiff's interpretation of the statutory language.

---

[3] Plaintiff's reference to the state's COVID-19 vaccine mandate is confusing. The first emergency use authorization for a COVID-19 vaccine was issued by the United States Food and Drug Administration on December 11, 2020. See US Health and Human Services, *COVID-19 Vaccines* < https://www.hhs.gov/coronavirus/covid-19-vaccines/index.html#:~:text=August%2023%2C%202021,years%20of%20age%20and%20older > (accessed June 20, 2024). Plaintiff challenges the applicability of a statute with an effective date from March 29, 2020 until July 14, 2020. MCL 691.1477. Consequently, the Legislature could

To discern its meaning, we first look to the statute's language. *In re Casey Estate*, 306 Mich App at 256-257. Some of the terms used in this statute are statutorily defined. "Health care facility" as used in MCL 691.1475 is defined by MCL 691.1473(b). MCL 691.1473(b) defines "health care facility" to include both state-operated and private healthcare facilities. One of the definitions for a healthcare facility is "[a] health facility or agency as defined in [MCL 333.20106]." MCL 691.1473(b)(*i*). MCL 333.20106(1)(f) defines a health facility or agency to be, among other things, "[a] hospital." A hospital is in turn defined as:

> a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative condition requiring the daily direction or supervision of a physician. Hospital does not include a mental health hospital licensed or operated by the department of health and human services or a hospital operated by the department of corrections. [MCL 333.20106(5).]

There is no dispute that defendant is a hospital as defined by statute. Even as a privately-owned hospital, defendant meets the definition of a "health care facility" as used in MCL 691.1475.

The statutory scheme also defines "[h]ealth care services" as "services provided to an individual by a health care facility or health care provider regardless of the location where those services are provided, including the provision of health care services via telehealth or other remote method." MCL 691.1473(d). This definition broadly defines healthcare services as any "services provided to an individual by a health care facility . . . ." MCL 691.1473(d). Viewed in context of the full statute, this broad phrase is limited by the qualifying language "in support of this state's response to the COVID-19 pandemic." The inquiry before this Court is how much this qualifier limits the statutory mandate. This phrase may be broken down into two parts: "in support of" and "this state's response to the COVID-19 pandemic." Discerning the Legislature's intent requires an understanding of both of these phrases. We address each part in turn.

The Legislature did not statutorily define the phrase "in support of." We may consult a dictionary to determine its common and ordinary meaning. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). First, the word "support," has multiple definitions, which include, as relevant: "to promote the interests or cause of;" "ASSIST, HELP;" "to pay the costs of : MAINTAIN;" "to hold up or serve as a foundation or prop for;" and "to keep (something) going." *Merriam-Webster's Collegiate Dictionary* (11th ed). The larger phrase "in support of" may be defined as: (1) "in a way that shows approval of (something) : in favor of (something)," or (2) "in order to support (something)." *Merriam-Webster Dictionary*, *in support of* <https://www.merriam-webster.com/dictionary/in%20support%20of> (accessed June 14, 2024). Placed in context of the statute, the phrase "provides health care services in support of" means providing any healthcare services that assisted, helped, or promoted the state's response to the COVID-19 pandemic. The remaining question is what constitutes the state's response to the COVID-19 pandemic.

---

not have contemplated the rendering of healthcare services in support of the administration of vaccines that did not yet exist during the statutorily applicable time period.

The terms used in the statutory phrase "this state's response to the COVID-19 pandemic" are also not statutorily defined. The word "response" may be defined as "an act of responding" or "something constituting a reply or a reaction." *Merriam-Webster's Collegiate Dictionary* (11th ed). Accordingly, the phrase "this state's response to the COVID-19 pandemic" may be interpreted to mean the state's reactions and actions taken as a result of the COVID-19 pandemic.

When put together, the full statutory phrase means that defendant was covered by this statute if it provided any healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic. This language includes the healthcare services that healthcare facilities like defendant gave to those infected with COVID-19 and regular healthcare services provided during the statutory period. At the time this statute was drafted, hospitals were at capacity treating COVID-19 patients. EO 2020-61. The state suspended various medical licensing requirements and regulations so that healthcare facilities could focus their finite resources on treating those patients. The state's desire for hospitals to provide this critical assistance and care necessitated the temporary rollback of certain regulations and restrictions and even the complete suspension of certain services. See EO 2020-17 (suspending nonessential medical and dental procedures). A consequence of redirecting hospital resources to fighting the COVID-19 pandemic was that other areas of medical care lost resources. As a result, we understand the immunity provision in MCL 691.1475 to cover both regular medical care and medical treatment specific to COVID-19.

Our conclusion that both the regular care and COVID-19 treatment provided by healthcare facilities assisted, helped, or promoted the state's response to the COVID-19 pandemic is supported by the executive orders from which the immunity provision in MCL 691.1475 was conceived. See *Twentieth Century Fox Home Entertainment, Inc*, 270 Mich App at 546. EO 2020-30 provided: "To ensure health care professionals and facilities are fully enabled *to provide the critical assistance and care needed by this state and its residents during this unprecedented emergency*, it is reasonable and necessary *to provide limited and temporary relief from certain restrictions and requirements* governing the provision of medical services." (Emphasis added.) The EO further provided that "[r]esponding effectively *to the urgent and steep demands created by the COVID-19 pandemic will require the help of as many health care professionals as possible*, working in whatever capacities are appropriate to their respective education, training, and experience." EO 2020-30 (emphasis added). Likewise, EO 2020-61 provides that the immunity provision was a response to the "widespread and severe health, economic, and social harms posed by the COVID-19 pandemic."

The executive orders discussed above show that this state's executive branch desired for hospitals to be able to more effectively provide care to patients and meet the increased medical demands during the state of emergency created by the COVID-19 pandemic. See EO 2020-30. To allow hospitals to do so, the executive orders lifted certain restrictions and granted immunity to claims that accrued during part of the declared emergency period.

MCL 691.1475 was one of the ways the legislative branch sought to address the COVID-19 pandemic and to assure that hospitals who provided care in the beginning months of the outbreak would:

> not [be] liable for an injury, including death, sustained by an individual by reason
> of those services, regardless of how, under what circumstances, or by what cause

those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility. [MCL 691.1475].

Accordingly, hospitals providing medical care to those infected with COVID-19 during the statutory period assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic. Defendant supported the state's response by providing care to patients, such as plaintiff, infected with COVID-19.

Plaintiff attempts to bolster his position by arguing that the state did not (1) designate defendant to be a facility in which COVID-19 specialized treatment was available, (2) direct plaintiff or other patients to go to defendant's hospital, or (3) compel plaintiff to seek out treatment with defendant. However, such requirements and conditions precedent to the elimination of liability for claims based on negligence which arose between March 29, 2020, and July 14, 2020, are not included in the language of the statute. There is no language suggesting that any of these measures were needed for a hospital, such as defendant, to support the state's reactions and actions in response to the COVID-19 pandemic. Plaintiff's argument impermissibly reads language that does not exist into the statutory text.

Addressing the remainder of the statutory language, immunity is granted only when injury or death has been "sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those injuries are sustained," unless subject to an exception. This broad language demonstrates that all possible deaths or injuries are covered by the statute unless excepted. With this understanding of the statutory text, we turn to the allegations pleaded by plaintiff.

Plaintiff went to defendant's hospital March 31, 2020, because he had shortness of breath and was admitted to the COVID-19 floor where he was intubated. He took a COVID-19 test that day. The parties dispute what day plaintiff's COVID-19 test came back positive, but the timing of the results was immaterial. Even assuming that his test results did not return until weeks later, plaintiff was treated for COVID-19 in the meantime.

Plaintiff was discharged from defendant's hospital on May 26, 2020, and transferred to the Veterans Affairs Ann Arbor Healthcare System for treatment for respiratory failure and a large sacral decubitus ulcer that developed during his stay at defendant's hospital. He was eventually discharged from the Veterans Affairs facility on July 24, 2020.

Plaintiff does not dispute that he had COVID-19, but contends that the fact that he contracted COVID-19 does not automatically render all subsequent care he received covered by MCL 691.1475. This argument does not comport with the statutory language. Plaintiff alleged that he developed multiple pressure ulcers in defendant's care. Those injuries were a consequence of the care defendant provided in response to COVID-19. Stated otherwise, those injuries were sustained by reason of the healthcare services provided by defendant in support of the state's response to the COVID-19 pandemic. Plaintiff presented at the hospital with signs of COVID-19, was admitted to the COVID-19 floor for COVID-19 treatment, and allegedly developed pressure

ulcers as a result of that care. Such a sequence of events is covered by the plain language of the statute.

## V. DISCOVERY

Given our conclusion that the statute applied to the care that defendant provided to plaintiff, the next inquiry is whether an exception to the statutory immunity applied. Plaintiff argues that he alleged gross negligence in his complaint such that the exception for gross negligence in MCL 691.1475 was applicable; however, further discovery was necessary to investigate those allegations. We disagree that plaintiff was entitled to additional discovery.

The scope of discovery is outlined in MCR 2.302(B)(1), which provides:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information. Information within the scope of discovery need not be admissible in evidence to be discoverable.

"Michigan follows an open, broad discovery policy that permits liberal discovery . . . ." *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 371; 986 NW2d 451 (2022) (quotation marks and citation omitted). Despite this open and broad policy, "discovery does not encompass fishing expeditions." *Id.* (quotation marks and citation omitted). A motion for summary disposition is generally premature if granted before completing discovery on the disputed issue; however, a party opposing a motion for summary disposition on the ground that discovery is incomplete "must at least assert that a dispute does indeed exist and *support that allegation by some independent evidence*." *Davis v Detroit*, 269 Mich App 376, 379-380; 711 NW2d 462 (2005) (quotation marks and citation omitted; emphasis added). Conjecture alone "does not entitle a party to discovery, because such discovery would be no more than a fishing expedition." *Id.* at 380.

In *Davis*, this Court previously rejected a plaintiff's request for additional discovery in a case involving the grant of summary disposition on governmental immunity grounds because the plaintiff "merely state[d] that, without discovery, it cannot be proven that there is no possible factual development that could provide a basis for recovery." *Id.* (quotation marks omitted). We reasoned that the plaintiff "provide[d] no further indication of what that basis might be, thus failing to satisfy even the minimal independent evidentiary support required . . . ." *Id.* Consequently, the defendant city was immune to suit in the absence of any allegations in avoidance of governmental immunity. *Id.*

Plaintiff, like the plaintiff in *Davis*, failed to provide any supporting evidence or indicate the existence of any evidence that may be uncovered in discovery to support his gross-negligence theory. Gross negligence is statutorily defined to be "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1473(a). On appeal, plaintiff summarily argues that because gross negligence is an exception to immunity under MCL 691.1475, more discovery would be needed to investigate these allegations further. In the lower

court proceedings, when the trial court asked what facts supported gross negligence, plaintiff's counsel similarly stated that discovery was needed "to make sure that these . . . gross neglect [sic] allegations do stand." Further, when the trial court asked plaintiff's counsel to put forth hypothetical facts that might support his theory of gross negligence, plaintiff's counsel nonresponsively discussed the hypothetical of a gunshot patient receiving care. In both courts, plaintiff failed to assert a theory of gross negligence and failed to provide any supporting evidence to suggest that a dispute exists.

Review of plaintiff's complaint further supports that plaintiff's request for additional discovery is unsupported. Plaintiff's complaint advanced two counts of negligence: one against defendant and one against defendant's nurse staff. The complaint consistently refers to ordinary negligence, but only contains two identical references to gross negligence: "by committing one or more negligent acts and/or grossly negligent acts and/or omissions . . . ." The complaint does not elaborate on these brief assertions. Further, Johnson's affidavit of merit only mentions negligence. During discovery, plaintiff disclosed to defendant that his legal theories were "based on MCL 600.2922, MCL 600.2912, and MCL 600.5838." MCL 600.2922 involves wrongful death actions and is inapplicable to this case. MCL 600.2912 and MCL 600.5838 involve medical malpractice. In his response to defendant's motion for summary disposition, plaintiff announced "[t]his is a professional negligence action alleging that [d]efendant's nursing staff deviated from the standard of care for nurses in caring for [p]laintiff during the above referenced time period." Nowhere did plaintiff allege that defendant or its nursing staff engaged in conduct so reckless that they showed a substantial lack of concern for whether plaintiff was injured. See MCL 691.1473(a).

Notably, plaintiff did not seek leave to amend his complaint to allege gross negligence in the lower court proceedings. Likewise, plaintiff makes no request for remand to amend his complaint in this Court. Plaintiff failed to show that he was entitled to further discovery. Accordingly, the trial court properly granted defendant summary disposition on immunity grounds.

## VI. VOID-FOR-VAGUENESS CHALLENGE

Plaintiff argues that MCL 691.1475 is unconstitutional because it is void for vagueness. Specifically, plaintiff contends that the statute allows for a number of interpretations as to what constitutes "services in support of this state's response to the COVID-19 pandemic." Noting that this is not the standard applicable to determining whether the statute is void for vagueness, we disagree.

The constitutionality of a statute is presumed, and the burden is on plaintiff to show otherwise. *In re TEM*, 343 Mich App at 180. "The 'void for vagueness' doctrine is a derivative of the constitutional guarantee that a state may not deprive a person of life, liberty, or property without due process of law." *Id*. (quotation marks and citation omitted). A challenge brought under this doctrine is an invocation of due process. *Id*. at 180-181. A party may show that a statute is void for vagueness if: "(1) it is overbroad and infringes First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in concluding whether the statute has been violated." *Id*. at 181 (quotation marks and citation omitted).

Like ordinary statutory interpretation, courts must examine the entirety of the statute and give its words their ordinary meaning. *Id*. Because this case does not involve First Amendment freedoms, we will examine it "in light of the facts of the particular case." *Id*. (quotation marks and citation omitted). This inquiry requires examination of the statute "in light of the *particular facts at hand* without concern for the hypothetical rights of others." *Id*. (quotation marks and citation omitted; emphasis added). Consequently, the proper inquiry does not address "whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case." *Id*. (quotation marks and citation omitted).

Plaintiff failed to overcome his burden of proving vagueness. MCL 691.1475, and in particular, the statutory phrase, "health care services in support of this state's response to the COVID-19 pandemic," has a reasonable interpretation that includes the circumstances of this case. As previously noted, "health care services" is defined as "services provided to an individual by a health care facility or health care provider regardless of the location where those services are provided, including the provision of health care services via telehealth or other remote method." MCL 691.1473(d). Given this definition, the challenged statutory phrase may be interpreted to cover a hospital that provided medical care during the statutorily designated period that assisted, helped, or promoted the state's reaction and actions taken as a result of the COVID-19 pandemic because the Legislature desired for hospitals to provide care to patients during an unprecedented statewide emergency. To accomplish this goal, the Legislature relieved hospitals of various restrictions, including malpractice claims, in order to meet the demands of the pandemic.

Plaintiff argues that the language in MCL 691.1475 allows for a number of interpretations as to what constitutes "services in support of this state's response to the COVID-19 pandemic." In support of assertion, plaintiff invokes hypotheticals such as whether the statute would cover individuals who seek hospital care for gunshot wounds or cancer treatment during the statutory period unrelated to COVID-19 treatment. This is not the standard for deciding whether a statute is void for vagueness. The inquiry is whether the statute is vague in light of the facts of this particular case. *In re TEM*, 343 Mich App at 181.

The present set of circumstances do not require an inquiry into whether the statute applies to plaintiff's gunshot or cancer hypotheticals. This case indisputably involved a patient who contracted COVID-19 and received treatment for it. These facts fall squarely into the statutory language. Plaintiff received his alleged pressure injuries during his treatment for COVID-19 in defendant's care. Accordingly, under the plain language of MCL 691.1475 in light of the facts of this case, the statute is not void for vagueness.

Moreover, none of the three scenarios in which the void-for-vagueness doctrine apply are present in this case. The First Amendment is not implicated, the statute gives fair notice of the conduct it regulates, and the statute does not give the trier of fact unlimited discretion in determining if the statute is violated. *In re TEM*, 343 Mich App at 181. The statute sets boundaries for its application. Through other subsections, the Act clearly defines "health care services" and "health care facility" as used in the statute. Additionally, MCL 691.1475 does not apply to injuries sustained as a result of gross negligence or certain intentional conduct, and the statute limits its

applicability to a set period of time. Under the facts of this case, the statute is not void for vagueness.[4]

## VII. CONCLUSION

In conclusion, we hold as follows:

1. The immunity provision in MCL 691.1475 applies to injuries and deaths that arose out of a healthcare facility's treatment, both regular care and COVID-19 care, in support of the state's response to the COVID-19 pandemic during the statutorily designated time period: March 29, 2020 until and including July 14, 2020.

2. Plaintiff failed to plead facts in support of a gross-negligence theory such that he was not entitled to further discovery.

3. MCL 691.1475 is not void for vagueness on the facts presented in this appeal.

Accordingly, we affirm the trial court's grant of summary disposition to defendant.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ David H. Sawyer

---

[4] On appeal, plaintiff raised the additional issue, whether the federal Public Readiness and Emergency Preparedness Act, 42 USC 247d-6d, applied. Despite raising this issue in his Statement of Questions Presented, plaintiff presented no analysis or mention of this issue in the remainder of his brief on appeal. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id*. (quotation marks and citation omitted). We do not address this issue that was either mistakenly included in the appellate brief or has been abandoned.